UNITED STATES of America,
Plaintiff–Appellee,

v.

Robert Michael HANRAHAN,
Defendant–Appellant.

No. 06–2268.

United States Court of Appeals,
Tenth Circuit.

Nov. 13, 2007.

Jane Greek, Assistant Federal Public Defender, Office of the Federal Public Defender for the District of New Mexico, Las Cruces, NM, appearing for Appellant.

Judith A. Patton, Assistant United States Attorney (Johnny Sutton, United States Attorney, with her on the brief), Office of the United States Attorney for the Western District of Texas, San Antonio, TX, appearing for Appellee.

Before TACHA, Chief Circuit Judge, BALDOCK, and KELLY, Circuit Judges.

TACHA, Chief Circuit Judge.

A jury convicted Defendant–Appellant Robert Hanrahan of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). The District Court sentenced him to 235 months' imprisonment. He appeals both his con-

viction and sentence. We exercise jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

## I. BACKGROUND

On July 15, 2004, Deputy Lawrence Tonna of the Bernalillo County Sheriff's Department was dispatched to the area of 1014 Ortega Road in Albuquerque, New Mexico to investigate an attempted burglary. The dispatcher reported that two male suspects had left the scene and were headed east on Ortega Road in a "primer gray" 1970s or 1980s full-sized Ford pickup truck. When Deputy Tonna arrived at the location of the alleged attempted burglary, witnesses confirmed the description of the vehicle and said that the truck had turned north onto South Guadalupe Trail. Several minutes later, Deputy Tonna spotted a truck on South Guadalupe Trail resembling the description provided to him by the dispatcher and witnesses. Although the body of the truck was "primer gray," the cab was painted white, and there was only one occupant.

Deputy Tonna pulled behind the truck and noticed that the truck's license plate was placed inside the lower right-hand corner of the rear windshield, rather than affixed to the bumper of the truck, which Deputy Tonna believed to be a violation of New Mexico law. He also noticed that the truck's registration sticker was the wrong color for the registration year, and that it read "96," indicating that the truck's registration had expired in 1996. Based on these observations, Deputy Tonna activated the lights on his patrol car to initiate a traffic stop. The truck immediately pulled over.

Before approaching the truck, Deputy Tonna ran a license-plate check, which confirmed that the truck's registration had expired in 1996. Deputy Tonna then approached the driver's side of the truck and asked the driver, Mr. Hanrahan, for his license, registration, and proof of insurance. Mr. Hanrahan did not have any of these documents. Deputy Tonna noticed that the steering column of the truck was broken and that wires were dangling from the ignition mechanism, indicating to Deputy Tonna that the vehicle might have been stolen. After two back-up deputies arrived, Deputy Tonna ordered Mr. Hanrahan out of the vehicle.

While Deputy Tonna escorted Mr. Hanrahan to the back of the truck, Deputy Levi Swint, one of the back-up officers, looked inside the truck's cab and saw a small gun in plain view next to the driver's seatbelt latch. He asked Mr. Hanrahan whether it was a gun or a lighter made to look like a gun. Mr. Hanrahan, who was facing away from the cab, acknowledged that it was, in fact, a gun. He further said that it belonged to a friend and that it was inoperable. Deputy Tonna, after noticing tattoos on Mr. Hanrahan's body that the deputy knew to be associated with a prison gang, asked Mr. Hanrahan whether he had served time in prison. Mr. Hanrahan admitted serving six years for armed robbery. Deputy Tonna then confirmed Mr. Hanrahan's criminal history and arrested him for being a felon in possession of a firearm.

On October 7, 2004, a grand jury indicted Mr. Hanrahan for being a felon in possession of a firearm, in violation of 18 U.S.C. § § 922(g)(1) and 924(e). Prior to trial, Mr. Hanrahan moved to suppress physical evidence and the statements he made during the traffic stop, arguing that he was stopped without reasonable suspicion of criminal activity in violation of the Fourth Amendment. The District Court denied the motion. The case went to trial, where Mr. Hanrahan testified in his own behalf. The jury was unable to reach a verdict, and the District Court declared a

mistrial. The Government retried Mr. Hanrahan. At the second trial, over Mr. Hanrahan's objection, the District Court allowed the Government to read Mr. Hanrahan's prior testimony into evidence. This time, the jury convicted Mr. Hanrahan.

A presentence report ("PSR") was prepared for sentencing. Because Mr. Hanrahan was considered an "armed career criminal," see 18 U.S.C. § 924(e),[1] the PSR stated that he was subject to a mandatory minimum sentence of fifteen years' (180 months) imprisonment, see id. In addition, due to his status as an armed career criminal, the PSR calculated Mr. Hanrahan's base offense level at 33 and placed him in Criminal History Category VI, which produced an advisory range of 235–293 months' imprisonment under the U.S. Sentencing Guidelines ("Guidelines" or "U.S.S.G."). See U.S.S.G. § 4B1.4(b)(3)(B); U.S.S.G. Ch. 5 pt. A. The District Court ultimately concluded that a sentence within the applicable Guidelines range was appropriate and sentenced Mr. Hanrahan to 235 months' imprisonment, as well as three years' supervised release. The court imposed a special condition on Mr. Hanrahan's supervised release—namely, that he submit to suspicionless searches when requested to do so.

Mr. Hanrahan now appeals, arguing that (1) the District Court erred in denying his motion to suppress evidence; (2) the District Court admitted Mr. Hanrahan's testimony from the first trial in violation of his Fifth Amendment privilege against self-incrimination; (3) there was insufficient evidence to support his conviction; (4) his sentence is unreasonably long; and (5) the

court abused its discretion in imposing the special condition on his supervised release.

## II. DISCUSSION

### A. Denial of the Motion to Suppress

■ In reviewing the district court's denial of a motion to suppress evidence, we view the evidence in the light most favorable to the government and accept the court's factual findings unless clearly erroneous. *United States v. Patterson*, 472 F.3d 767, 775 (10th Cir.2006). It is within the province of the district court to assess the credibility of witnesses, weigh the evidence, and draw reasonable inferences therefrom. *United States v. Tibbetts*, 396 F.3d 1132, 1136 (10th Cir.2005). We review de novo the ultimate determination of reasonableness under the Fourth Amendment. *Patterson*, 472 F.3d at 775.

■ Whether a traffic stop is constitutional is a two-step inquiry. First, we consider whether the officer's action is justified at its inception. *Id.* (quotations omitted). Second, we consider whether the traffic stop "was reasonably related in scope to the circumstances that justified the interference in the first place." *Id.* Because Mr. Hanrahan does not argue that the deputies unjustifiably exceeded the permissible scope of the traffic stop, our focus in this case is on the first inquiry.

■ A traffic stop is reasonable under the Fourth Amendment if the officer had reasonable suspicion that the driver "violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction." *Id.* (quotations omitted). Deputy Tonna initiated a traffic stop be-

---

1. A defendant convicted of violating 18 U.S.C. § 922(g) is considered an "armed career criminal" if he has three previous convictions for "violent felon[ies] or ... serious drug offense[s], or both, committed on occasions dif-

ferent from one another." 18 U.S.C. § 924(a), (e)(1). Mr. Hanrahan had convictions for armed robbery, burglary, and aggravated battery with a deadly weapon.

cause he believed that the truck's registration had expired, *see* N.M. Stat. Ann. § 66–3–18(C) (prohibiting operating a vehicle with a registration sticker for other than the current registration period), and because he believed that Mr. Hanrahan's license plate was unlawfully displayed in the truck's rear window, *see* N.M. Stat. Ann. § 66–3–18(A) (requiring the registration plate to be attached to the rear of the vehicle and clearly visible). Mr. Hanrahan does not contest that a violation of either statutory provision would support a traffic stop; rather, he argues that (1) Deputy Tonna could not have seen the date on the registration sticker and therefore had no basis under N.M. Stat. Ann. § 66–3–18(C) to stop him; and (2) it is not unlawful to display a license plate in the window of a vehicle, so N.M. Stat. Ann. § 66–3–18(A) similarly provides no basis for the stop. He also maintains that Deputy Tonna lacked reasonable suspicion to stop him for the alleged attempted burglary.

As to the first contention, Mr. Hanrahan maintains that Deputy Tonna could not have seen the registration sticker because the traffic stop occurred late at night in a neighborhood without street lights, and because the license plate was placed on the rear window above the beam of the patrol car's headlights. During the suppression hearing, however, Deputy Tonna testified that when he began following the truck, his patrol car's headlights illuminated the truck and he "immediately noticed" that the registration sticker was "different than it should have been." Specifically, he observed that the sticker was red with white lettering, while the current registration year's sticker was gray with black lettering. He also noticed that "96," instead of "04" was printed on the sticker. At that

point, Deputy Tonna effected the traffic stop. The District Court found Deputy Tonna's testimony credible and therefore determined that the stop was warranted because he had reasonable suspicion that Mr. Hanrahan had violated N.M. Stat. Ann. § 66–3–18(C). Because the court's factual finding is supported by the evidence, it is not clearly erroneous. The traffic stop was therefore justified on this basis, and we need not reach Mr. Hanrahan's other arguments on this point.

*B. Admission of Mr. Hanrahan's Prior Testimony*

■ Mr. Hanrahan next argues that the District Court violated his Fifth Amendment privilege against self-incrimination when the court permitted a witness for the Government to read Mr. Hanrahan's testimony from the first trial into evidence in the second trial.[2]

■ Under the Fifth Amendment, "[a] defendant who chooses to testify waives his privilege against compulsory self-incrimination with respect to the testimony he gives." *Harrison*, 392 U.S. at 222, 88 S.Ct. 2008. But if a defendant chooses not to testify, the Fifth Amendment prohibits a prosecutor from commenting on that decision. *See United States v. Nelson*, 450 F.3d 1201, 1212 (10th Cir.2006) ("The general rule of law is that once a defendant invokes his right to remain silent, it is impermissible for the prosecution to refer to any Fifth Amendment rights which defendant exercised." (quotation omitted)). In reviewing whether the prosecutor improperly commented on the defendant's silence, the court looks at "whether the language used by the prosecutor was manifestly intended or was of such character that the jury would natu-

---

**2.** The testimony was not hearsay because, as Mr. Hanrahan conceded at trial, it was an admission by a party-opponent. *See* Fed. R.Evid. 801(d)(2)(A) (statements made by a party and offered against a party are not hearsay).

rally and necessarily take it to be a comment on the failure of the accused to testify." *Id.* (quotation and alteration omitted).

In this case, Mr. Hanrahan does not point to any statement made by the prosecutor that amounts to a comment on his decision not to testify. Instead, he argues that his former testimony in large part corroborated the Government's other evidence, and thus its primary effect was to highlight to the jury that he was not testifying in the present case. This argument is without merit. When the Government introduced Mr. Hanrahan's prior statement into evidence, it did not reveal that it was testimony from a prior trial; it was read into evidence by ATF Special Agent Frank Ortiz, who testified simply that he was present "when the defendant gave a statement under oath." Similarly, the prosecutor revealed nothing that would indicate to the jury that the testimony came from a prior trial—let alone that would cause the jury to consider it a comment on Mr. Hanrahan's choice not to testify in the current trial. In addition, the Government presented Mr. Hanrahan's former testimony as part of its case-in-chief, before it was clear whether Mr. Hanrahan would or would not testify. Thus, the jury could not naturally and necessarily construe the Government's introduction of Mr. Hanrahan's prior testimony as an impermissible comment by the prosecution on Mr. Hanrahan's decision not to testify in his second trial.

We similarly reject Mr. Hanrahan's suggestion that the prosecutor improperly commented on the testimonial evidence during closing argument. During closing arguments, the prosecutor referred to Mr. Hanrahan's statement as evidence that Mr. Hanrahan knew of the gun's presence and had access to it in the truck. This was a fair comment on the evidence and did not amount to an impermissible comment on Mr. Hanrahan's silence. *See Nelson*, 450 F.3d at 1213 (prosecutor's reference to defendant's post-arrest statements was not impermissible comment on defendant's failure to testify when it was clear that prosecutor used defendant's words as an admission of guilt).

## C. Sufficiency of the Evidence

■ We review claims of insufficient evidence de novo, viewing the evidence in the light most favorable to the government. *United States v. Willis*, 476 F.3d 1121, 1124 (10th Cir.2007). "Evidence is sufficient to support a conviction if . . . a reasonable jury could have found the defendant guilty beyond a reasonable doubt." *Id.* (quotation omitted). "We must not weigh conflicting evidence or consider the credibility of the witnesses, but simply determine whether the evidence, if believed, would establish each element of the crime." *United States v. Vallo*, 238 F.3d 1242, 1247 (10th Cir.2001) (quotation and alteration omitted).

■ Mr. Hanrahan argues his conviction must be reversed because there is insufficient evidence that he "knowingly possessed" the gun.[3] To establish this element, the Government must show the defendant actually or constructively possessed the firearm. *United States v. Jameson*, 478 F.3d 1204, 1209 (10th Cir. 2007). A person has actual possession when he has "direct physical control over the firearm at a given time." *Id.* On the other hand, a person has constructive possession of a firearm when he "knowingly

---

**3.** To obtain a conviction for being a felon in possession under 18 U.S.C. § 922(g), the government must prove: "(1) the defendant was previously convicted of a felony; (2) the defendant thereafter knowingly possessed a firearm; and (3) the possession was in or affecting interstate commerce." *United States v. Ledford*, 443 F.3d 702, 705 (10th Cir.2006).

holds the power and ability to exercise dominion and control over [it]." *Id.* In this way, constructive possession may occur when a person has exclusive possession of the premises where a firearm is found. *Id.* In such a case, "knowledge, dominion, and control can be properly inferred because of the exclusive possession alone." *Id.* When two or more people occupy the space where the firearm is found, however, proximity to the firearm alone is insufficient to establish knowledge of and access to that firearm. *Id.* In such a "joint occupancy" case, proximity is probative, but it must be combined with other evidence to support an inference of knowledge of and access to the firearm. *Id.*

The District Court instructed the jury on the law pertaining to both actual and constructive possession. Further, it instructed the jury on both sole-occupancy and joint-occupancy situations because a witness for the defense, Eddie Hartman, testified that he had borrowed Mr. Hanrahan's truck earlier in the day and left the gun there. Even under the most stringent instruction—the instruction pertaining to constructive possession in a joint-occupancy situation—there is sufficient evidence that Mr. Hanrahan knowingly possessed the firearm. The gun was in plain view on the truck's bench near the driver's seatbelt latch, where the driver's right hip would be; Mr. Hanrahan is right-handed. While Mr. Hanrahan was detained at the back of the truck, Deputy Swint asked whether the object was a gun or a lighter. Deputy Swint did not remove the gun from the seat when he asked the question, and from his position, Mr. Hanrahan could not see into the truck's cab. Nevertheless, Mr. Hanrahan responded, without hesi-

tation, that it was a gun. He also volunteered that it was inoperable. A reasonable jury could infer from Mr. Hanrahan's admissions at the scene and his knowledge of the gun's working condition at the time of his arrest that he knew the gun was present in the car. Mr. Hanrahan points to no evidence that warrants reversal of the jury's verdict.[4]

*D. Reasonableness of the Sentence*

 We review a district court's sentencing decision for an abuse of discretion, asking whether the sentence is "reasonable" based on the factors set forth in 18 U.S.C. § 3553(a). *United States v. Garcia–Lara,* 499 F.3d 1133, 1134 (10th Cir.2007). A sentence must be both procedurally and substantively reasonable. *See United States v. Mateo,* 471 F.3d 1162, 1166 (10th Cir.2006). A procedurally reasonable sentence is one that is " 'reasoned,' or calculated utilizing a legitimate method," and substantive reasonableness concerns "the actual length of the sentence imposed" in light of the § 3553(a) factors. *Id.* (quotation omitted).

 Mr. Hanrahan does not challenge any procedural aspect of the court's sentencing decision. Instead, he argues that it is unreasonably long. Because his sentence is within the range recommended by the Guidelines, it is entitled to a presumption of reasonableness on appeal. *United States v. Kristl,* 437 F.3d 1050, 1054 (10th Cir.2006); *see also Rita v. United States,* —— U.S. ——, 127 S.Ct. 2456, 2462, 168 L.Ed.2d 203 (2007) (holding that a court of appeals may apply a presumption of reasonableness to sentences properly calculat-

---

4. According to Mr Hanrahan, his demeanor during the traffic stop (he was cooperative), the lack of fingerprints on the gun, the absence of ammunition, Mr. Hartman's "uncontradicted" testimony that he accidentally left the gun on the truck's seat earlier that day, and the fact that the dome light inside the truck did not work show that Mr. Hanrahan never saw the gun on the seat.

ed under the Guidelines). As we explain below, Mr. Hanrahan has failed to rebut this presumption.

■■■ Mr. Hanrahan argues that his sentence is unreasonable because the nature of the instant offense was "benign" because the gun was small and unloaded, it did not belong to him, it was inoperative, and it was not used to commit another crime. He also maintains that because he is subject to a mandatory minimum sentence of fifteen years, he will be released from prison at an age (approximately fifty-six) where recidivism is unlikely; thus, a longer sentence will not provide any additional protection to the public. In a similar vein, he maintains that all three predicate offenses which subjected him to sentencing under the Armed Career Criminal Act occurred in the 1980s and are therefore sufficiently "stale" so as to warrant a sentence of no more than fifteen years.

The District Court thoroughly considered and rejected these contentions. It noted that the Guidelines do not distinguish among firearms of different sizes. In addition, the court heard testimony that the gun could easily be concealed and that, although it was inoperable at the time of Mr. Hanrahan's arrest, it could easily be made operable by using a rubber band. Furthermore, although no evidence definitively connected Mr. Hanrahan to the attempted burglaries that Agent Tonna was investigating at the time of Mr. Hanrahan's arrest, the court declined to consider the offense benign simply because Mr. Hanrahan was not convicted of committing an offense while possessing the gun.

Finally, neither Mr. Hanrahan's age nor the age of his predicate convictions justify a sentence below the Guidelines range. The Armed Career Criminal Act is designed to punish recidivists more harshly than first-time offenders and, as the Dis-

trict Court noted, Mr. Hanrahan has engaged in extensive criminal conduct that continued to the date of his arrest in this case. This belies Mr. Hanrahan's contention that he poses a low risk of recidivism.

In short, the District Court expressly considered the factors that Mr. Hanrahan cites in support of a shorter sentence, but it concluded that in light of the § 3553(a) factors, a sentence at the low end of the applicable Guidelines range was appropriate. We find no abuse in the court's exercise of its discretion.

## E. Special Condition of Supervised Release

Finally, we address Mr. Hanrahan's argument regarding the District Court's imposition of a special condition of supervised release requiring him to submit to suspicionless searches.

■■■ District courts have broad discretion to set a condition on supervised release, *see United States v. Edgin*, 92 F.3d 1044, 1048 (10th Cir.1996), and we will remand for resentencing only when the court abuses that discretion, *see United States v. Zanghi*, 209 F.3d 1201, 1203 (10th Cir.2000). A court may impose any condition on supervised release it deems appropriate so long as it is reasonably related to and involves no greater deprivation of liberty than is reasonably necessary given "the nature and circumstances of the offense and the history and characteristics of the defendant," the need "to afford adequate deterrence to criminal conduct," the need "to protect the public from further crimes of the defendant," and the need "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." *Edgin*, 92 F.3d at 1048 (quoting 18 U.S.C. § 3553(a)(1),

(a)(2)(B)-(D)); *see also* 18 U.S.C. § 3583(d).

In this case, after giving Mr. Hanrahan notice of its intent to do so, the District Court imposed the following special condition on his supervised release: "The defendant must submit to a search of his person, property, or automobile under his control to ensure compliance with all conditions of probation. He must inform any residents that the area may be subject to search." According to Mr. Hanrahan, this condition is not reasonably related to the nature and circumstances of the offense, and, accordingly, the District Court abused its discretion when it set such a term of his release.

It is well-established that the purpose of supervised release is to provide enough supervision to prevent recidivism on the part of the offender. *See* U.S.S.G. Ch. 7 Pt. A(4) (stating that "the purpose of ... supervised release should focus on the integration of the violator into the community, while providing the supervision designed to limit further criminal conduct"); *see also* 18 U.S.C. § 3583(d) (requiring courts to balance the defendant's liberty interest with the need to afford adequate deterrence to criminal conduct in imposing conditions on supervised release). Mr. Hanrahan was convicted of unlawfully possessing a firearm. Thus, one effective means of preventing Mr. Hanrahan from committing a similar offense in the future is to require him to submit to suspicionless searches after he has been released from prison but while he is still under the supervision of the Probation Office. *See United States v. White,* 244 F.3d 1199, 1208 (10th Cir.2001) (upholding suspicionless searches as a condition of supervised release for defendant convicted of possession of child pornography); *cf. Samson v. California,* 547 U.S. 843, 126 S.Ct. 2193, 2196, 165 L.Ed.2d 250 (2006) (holding that a suspi-cionless search of a parolee did not violate the Fourth Amendment when a state statute authorized it). Searches based on some particularized level of suspicion, by way of contrast, would likely not be as effective at deterring future crimes of possession since the defendant could easily conceal such wrongdoing. *Cf. Griffin v. Wisconsin,* 483 U.S. 868, 878, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987) (stating that "a probable-cause requirement [to search a parolee] would reduce the deterrent effect of the supervisory arrangement"). We have reviewed the record in its entirety, and we are satisfied that in this case the District Court acted within its discretion when it imposed the suspicionless-search special condition on Mr. Hanrahan's supervised release.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM Mr. Hanrahan's conviction and his sentence.