**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 11, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

ZACHARY LANGEL,

      Defendant-Appellant.

No. 07-1319
(D.Ct. No. 06-cr-00424-REB)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Circuit Judge, and **BARRETT** and **BRORBY**, Senior Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Appellant Zachary Langel pled guilty to one count of being a felon in

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  He now appeals his conviction, arguing the district court erred in failing to suppress a firearm discovered in his car during a traffic stop which he contends violated his Fourth Amendment rights.  We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm Mr. Langel's conviction.

## I.  Factual and Procedural Background

The facts of Mr. Langel's traffic stop are outlined in the district court's order on his motion to suppress and supported in the record provided on appeal.  *See United States v. Langel*, 2007 WL 1229316 (D. Colo. April 24, 2007) (slip op.).  We recount only those facts necessary for consideration of the single issue presented by Mr. Langel on appeal.

On September 27, 2006, at 8:24 p.m., three officers from the Aurora, Colorado Police Department were in an unmarked vehicle patrolling east Colfax Avenue – a major four-lane street consisting of two eastbound and two westbound traffic lanes.  *Id.* at *1.  The traffic was moderately heavy and the officers were following a vehicle directly in front of them in the right-hand lane.  *Id.*  After following the vehicle for about three blocks, or approximately thirty seconds, they observed it cross approximately one foot over the dotted center line separating the right westbound lane from the left westbound lane, where it remained for about a

second. *Id.* The vehicle then moved further to the left, where it straddled the center line and remained for another second before swerving abruptly back into the right westbound lane in which it had been traveling. *Id.* During this time, another vehicle was traveling in the left westbound lane between the officers' vehicle and the vehicle they were following, but no collision occurred. *Id.* The erratic acts of weaving and swerving were not proceeded by a turn or hand signal or dictated by traffic, road, or weather conditions. *Id.* These acts also occurred in an area known to have a high incidence of alcohol- and drug-related driving offenses, vehicle accidents, and pedestrian-vehicle accidents. *Id.*

The officers initiated a traffic stop. *Id.* at *2. As Officer David Gallegos approached the driver's side and Officer Michael Gaskill approached the passenger's side, the driver, Mr. Langel, rolled down the passenger's side window; at this time, Officer Gallegos could see smoke in the car and smell a heavy odor he recognized as freshly burnt marijuana. *Id.* The traffic stop then became a criminal investigation based on the belief Mr. Langel may have been driving under the influence of marijuana or that he had used and/or possessed marijuana illegally.[1] *Id.* As he interacted with Mr. Langel, who had exited the

---

[1] Other issues raised in Mr. Langel's suppression motion and at the subsequent hearing concerned the legality of his arrest, the search of his person and the vehicle, and incriminating statements Mr. Langel made to the officers at the scene, including his comments he swerved as he was throwing a marijuana

(continued...)

vehicle, Officer Gallegos could smell the distinct odor of marijuana on his person. *Id.* While Officer Gallegos continued to interact with Mr. Langel, Officer Gaskill began a search of the vehicle, where he found a handgun under the front seat. *Id.* Subsequent information verified Mr. Langel was subject to an arrest warrant and had a prior felony conviction. *Id.*

Following his arrest, a grand jury indicted Mr. Langel for violating 18 U.S.C. § 922(g)(1), which bans convicted felons from possessing a firearm. Relying on our decision in *United States v. Gregory*, 79 F.3d 973 (10th Cir. 1996), Mr. Langel filed a motion to suppress the firearm as evidence claiming, in part, that the officers did not have reasonable suspicion or probable cause to make the initial traffic stop because, like the defendant in *Gregory*, he only momentarily swerved into the other lane and the Colorado traffic statutes he violated are similar to the statute violated in *Gregory*.

The district court held a hearing on the motion, at which time Officer Gallegos testified as to the circumstances surrounding the traffic stop. *Langel*, 2007 WL 1229316, at *1. In denying Mr. Langel's request to exclude the firearm

---

[1](...continued)
roach out of the window and that he "was done [and] ... going away for a very long time" after Officer Gaskill found the gun in the car. *Id.* at **4-5. Because Mr. Langel has not raised these issues on appeal, we do not address them.

as evidence, the district court found Officer Gallegos's testimony to be credible and cogent and that the officers, based on their personal observation of Mr. Langel's erratic driving, had reasonable suspicion as well as probable cause to stop him for violating Colorado statutes prohibiting a lane change without ascertaining if it can be made with reasonable safety or using an appropriate lane change signal. *Id.* at **1, 4 (relying on C.R.S. §§ 42-4-903(1) and 42-4-1007(1)(a)). In making this determination, the district court pointed out our decision in *Gregory* was both factually and legally distinguishable because it involved Utah law where we determined the single act of weaving to the right of the roadway into an emergency lane on a winding road, in mountainous terrain and windy weather, did not warrant a stop of the defendant. *Id.* at *4 n.7; *see also Gregory*, 79 F.3d at 978. In contrast, the district court explained that in the instant case, Mr. Langel wove inexplicably into the other lane and the path of another vehicle without any adverse weather or driving conditions and in violation of Colorado statutes which implicated more than just a weaving violation. *See Langel*, 2007 WL 1229316, at *4 n.7. It then concluded the traffic stop, which was based on observed traffic violations, was justified at its inception and valid under the Fourth Amendment. *Id.* at *4. It also determined the officers, on witnessing Mr. Langel's erratic driving and then seeing and smelling marijuana smoke, had probable cause to arrest him for driving under the influence of drugs and/or possession and use of marijuana, and that the contemporaneous

search of his vehicle, at which point the firearm was found, was incident to a lawful arrest as an exception to the Fourth Amendment. *Id.* at *4.

Following the district court's order, Mr. Langel pled guilty to one count of being a felon in possession of a firearm, subject to the condition he could appeal the district court's denial of his motion to suppress. Thereafter, the district court sentenced him to fifty-one months imprisonment and three years supervised release.

## II. Discussion

On appeal, Mr. Langel frames the issue as follows:

> "It is quite commonplace," this court has said, "for a driver to drift, momentarily, from his position within a lane," and on occasion the court has declined to authorize a traffic stop solely on the basis of a single incident of drifting. Mr. Langel, while driving a car, drifted momentarily from his lane. Was the district court wrong to uphold his stop?

Apt. Br. at 1. In making this argument, Mr. Langel continues to rely extensively on our decision in *Gregory*. In so doing, he admits the distinguishing factors of high winds and a mountainous road are not present here but claims the holding in *Gregory* should apply anyway because the Colorado statutes in violation here are similar to the Utah statute in that case, and his lane change "could only have been

three feet or so," which is similar to the two-foot lane change in *Gregory*.[2]

We review a district court's denial of a motion to suppress evidence "in the light most favorable to the government and accept the court's factual findings unless clearly erroneous." *United States v. Hanrahan*, 508 F.3d 962, 966 (10th Cir. 2007) (citation omitted), *petition for cert. filed* (U.S. Feb. 8, 2008) (No. 07-9543). In considering such a motion, "[i]t is within the province of the district court to assess the credibility of witnesses, weigh the evidence, and draw reasonable inferences therefrom." *Id.* In considering the district court's denial of a motion to suppress, "[w]e review de novo the ultimate determination of reasonableness under the Fourth Amendment." *Id.* Whether a traffic stop is constitutional is a two-step inquiry in which we determine if: 1) the officer's action is justified at its inception; and 2) the traffic stop was reasonably related in scope to the circumstances justifying the interference in the first place. *See id.* Because Mr. Langel does not contest the second part of our inquiry, we look only to whether the traffic stop was justified at its inception. *See id.* "A traffic stop is

---

[2] While the record indicates Mr. Langel crossed approximately one foot over the dotted center line dividing the right westbound lane from the left westbound lane for one second, it does not indicate the total additional feet Mr. Langel swerved when he moved further left for another second and straddled the center line. Nevertheless, even if we accept Mr. Langel's premise he crossed a total of three feet, it is insufficient for us to conclude the traffic stop was invalid, especially when considered with the other evidence which supports the validity of the stop.

valid at its inception if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." *United States v. Lyons*, 510 F.3d 1225, 1234 (10th Cir. 2007) (quotation marks, citation, and alterations omitted).

Applying our standard of review and the principles applicable to a traffic stop, it is clear the officers had a reasonable articulable suspicion to stop Mr. Langel for his patent traffic violations which they personally observed and which occurred in conditions unlike those presented in *Gregory*. As the district court pointed out, the circumstances in *Gregory* differed from those here because it involved the single act of weaving into an emergency lane on a winding road in mountainous terrain and windy weather. Here, no such conditions existed. Nothing about the weather appears to have contributed to Mr. Langel's erratic operation of the vehicle and Mr. Langel did not enter into an emergency lane unoccupied by other vehicles but swerved into another lane of traffic where the danger of collision with another vehicle existed. His erratic driving occurred not on a less-traveled mountainous road, but on a major four-lane thoroughfare in Aurora, Colorado, which is part of a major metropolitan area. It also occurred on a section of east Colfax known to have a high incidence of alcohol- and drug-related driving offenses, vehicle accidents, and pedestrian-vehicle accidents.

Having reviewed the record on appeal, we conclude the district court's factual findings are not clearly erroneous and that the circumstances presented are "sufficient to create a reasonable suspicion that [the driver] of the vehicle might be sleepy or impaired, and could present a risk of harm to himself and others." *See United States v. Ozbirn*, 189 F.3d 1194, 1199 (10th Cir. 1999). Thus, after viewing the district court's denial of Mr. Langel's motion to suppress in the light most favorable to the government, we agree a reasonable articulable suspicion existed for the traffic stop, and therefore the stop was reasonable under the Fourth Amendment. For these reasons, Mr. Langel's argument he drifted only one foot more than the driver in *Gregory*, or that the Colorado traffic statutes he violated are similar to the Utah statute at issue in *Gregory*, are insufficient to establish a Fourth Amendment violation when considered together with the other circumstances supporting his traffic stop.

Our determination is bolstered by a plethora of cases distinguishing *Gregory* from situations similar to the one presented here, where the road conditions surrounding the traffic stop were unlike those in *Gregory*. *See, e.g., United States v. Valenzuela*, 494 F.3d 886, 887, 889 (10th Cir.) (affirming traffic stop where no outside factors contributed to vehicle drifting into another lane for three to four feet and several seconds before returning to its lane), *cert. denied*, 128 S. Ct. 636 (2007); *United States v. Alvarado*, 430 F.3d 1305, 1306-07, 1309

(10th Cir. 2005) (affirming traffic stop where no adverse road or weather conditions caused vehicle to drift out of the right-hand lane and over the fog line for a few seconds); *United States v. Cline*, 349 F.3d 1276, 1285-87 (10th Cir. 2003) (upholding stop of motorist who swerved where nothing about the road conditions would have caused such an action); *United States v. Zabalza*, 346 F.3d 1255, 1257-58 (10th Cir. 2003) (upholding traffic stop on interstate based on officer's observation vehicle crossed center line twice in weather which would not make it impracticable to maintain a single lane of travel); *Ozbirn*, 189 F.3d at 1196, 1198-99 (affirming traffic stop based on defendant's motor home drifting onto the shoulder twice in less than a quarter mile under optimal weather conditions); *United States v. Dunn*, 133 F.3d 933, 1998 WL 8227, at **1-2 (10th Cir. Jan. 12, 1998) (unpublished op.) (upholding traffic stop where car swerved out of its lane on fairly straight, non-mountainous interstate with slight grade and winds less than twenty miles per hour in a car easier to control than the U-Haul truck driven in *Gregory*).[3]  In distinguishing *Gregory* from other cases involving a vehicle drifting or swerving outside its traffic lane, we have explained *Gregory* does not establish an absolute standard or bright-line rule on what constitutes a valid traffic stop but that, like here, all of the surrounding facts and circumstances

---

[3]  We rely on this unpublished case given it has persuasive value and provides reasoned guidance on a like issue.  *See* 10th Cir. R. 32.1(A); *United States v. Samuels*, 493 F.3d 1187, 1194 n.9 (10th Cir.), *cert. denied*, 128 S. Ct. 815 (2007).

must be considered to determine if the stop was valid. *See Valenzuela*, 494 F.3d at 889; *Alvarado*, 430 F.3d at 1308; *Cline*, 349 F.3d at 1286-87; *Ozbirn*, 189 F.3d at 1198.

### III. Conclusion

For the foregoing reasons, we **AFFIRM** Mr. Langel's conviction.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge