FILED
United States Court of Appeals
Tenth Circuit

April 26, 2013

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

       Plaintiff–Appellee,

v.

MARLO L. TOOMBS,

       Defendant–Appellant.

No. 11-3271

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 2:10-CR-20009-CM-1)**

Melanie Susan Morgan, Morgan Pilate LLC, Kansas City, Missouri, for the Defendant-Appellant.

James A. Brown (Barry R. Grissom with him on the briefs), Office of the United States Attorney, District of Kansas, Topeka, Kansas, for the Plaintiff-Appellee.

Before **LUCERO**, **MURPHY**, and **HARTZ**, Circuit Judges.

**LUCERO**, Circuit Judge.

In 2008, a jury found Marlo Toombs guilty on seven counts of drug and firearm felony offenses. On appeal, we reversed and remanded his case for violations of the Speedy Trial Act. United States v. Toombs, 574 F.3d 1262, 1273-74 (10th Cir. 2009). After the district court dismissed Toombs' indictment without prejudice, the government filed a new indictment and a jury subsequently found Toombs guilty of six charges.

On appeal, Toombs contends that the district court abused its discretion by admitting the entirety of his testimony from the first trial into evidence at his second trial and by dismissing his first indictment without prejudice. We conclude that the district court erred in admitting Toombs' testimony without first ruling on discrete admissibility objections under the Federal Rules of Evidence. However, in the context of the entire record—there remaining a residuum of clearly admissible evidence—the error was harmless. We determine that the dismissal without prejudice was not an abuse of discretion. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**

**A**

On April 26, 2006, a grand jury in Kansas City, Kansas, indicted Toombs and his co-defendant, Arlynda Osborn, on eight drug and firearm offenses. On May 2, 2006, Toombs was arraigned and remained incarcerated until his trial began on March 4, 2008. Osborn fled Kansas and remained at large until she was arrested in 2007.

Before his 2008 trial, Toombs' attorneys filed and were granted seven motions to continue. During the same period, the government filed and was granted one motion to

continue on the basis that its officers were making concerted efforts to locate and arrest Osborn. Defense counsel did not object to this motion.

On October 24, 2007, less than two weeks before trial was scheduled to begin, the government filed a second motion to continue on the grounds that Osborn had been located and was in federal custody en route to Kansas City. Toombs' attorney objected to this further continuance and filed a motion to sever his case from Osborn's, arguing that the delay caused by the joint trial was unreasonable. The district court denied Toombs' motion to sever and granted the government's motion to continue.

In December 2007 and February 2008, Toombs filed two motions to dismiss. The first motion asserted a violation of his Sixth Amendment right to a speedy trial, and the second alleged a violation of his rights under the Speedy Trial Act, 18 U.S.C. § 3161. The district court denied both motions. The jury returned guilty verdicts against Toombs on seven counts and Toombs received a thirty-five year sentence.

Toombs appealed, claiming the district court erred in denying his motions to dismiss. This court concluded that the district court's explanations for two ends-of-justice continuances were inadequate, resulting in violations of the Speedy Trial Act. Toombs, 574 F.3d at 1273-74. We reversed and remanded for a determination of whether to dismiss the indictment with or without prejudice. Id. at 1276.

On remand, the district court dismissed the indictment without prejudice. On January 6, 2010, a grand jury returned a new indictment against Toombs and the case proceeded to trial.

-3-

**B**

At Toombs' second trial, the government submitted evidence indicating that Toombs had participated in a drug conspiracy run out of several homes in the Kansas City region, including one house at 201 Topeka Avenue in Leavenworth, Kansas.

Officer William Naff testified that he had conducted surveillance at 201 Topeka Avenue on over one hundred occasions. He stated that he had observed Toombs and Osborn regularly entering and leaving the residence, and that they "appeared to be living there." He also described a search of the residence's garbage that uncovered receipts and mail bearing the names of Osborn, Toombs, and a Toombs alias. The trash also included paraphernalia associated with cooking crack cocaine and drug distribution, including plastic bags that tested positive for narcotics residue.

After the police obtained a warrant, Naff and a team of other officers searched the house. Naff found bags and boxes containing powder cocaine, crack cocaine, marijuana, and ecstasy in the residence's kitchen. The search also uncovered drug packaging supplies as well as a money counter and almost $14,000 in cash. The amount of drugs, the way they were packaged, and the presence of scales and packing materials made Naff believe the house was inhabited by someone distributing narcotics. Another officer who participated in the search opined that "[t]his was the supplier to the low level or the small time dealers. This was the guy that gave the guys on the streets their product to sell to the users." Officers found six handguns, six shotguns, and five rifles stored throughout the residence. In addition, they recovered several boxes of ammunition and a live grenade.

According to Naff and other participating officers, the search uncovered substantial indicia that Toombs lived at the residence. Police found a variety of documents bearing the name Marlo Toombs or an alias of Toombs, including mail, phone bills, documents sent from a mortgage company, a real estate contract, tax records, a checkbook, and official court documents. They also found a current, valid Missouri state identification card for Toombs as well as weight-lifting supplements and men's clothing that may have belonged to Toombs.

Toombs' co-defendant Osborn testified that she had known Toombs since she was eight years old because he fathered three children with her older sister. Osborn stated that when she was twenty, she moved in with Toombs at an address on Pottowatomie Street in Leavenworth because she "didn't have another option" and to help him recuperate from a major injury. She described how, in the course of living with Toombs, she came to learn that Toombs had relationships with several women other than herself or her sister, and had fathered several children with these other women.

Osborn acknowledged that she began selling drugs with Toombs after moving in with him, stating that "[w]hen I moved there he was already selling drugs" and admitting she knew this was the case. Osborn testified that she and Toombs moved repeatedly, using each residence for drug preparation or sales. Even after she and Toombs moved to a new address, their former homes were still used for drug sales.

Osborn affirmed that she lived at 201 Topeka Avenue from January 2005 until the date of the search, October 27, 2005. Toombs occasionally stayed there and had a key to

-5-

the house. Osborn described how she and Toombs distributed substantial quantities of drugs from the home, including as much as two to three kilograms per month of crack or powder cocaine. Osborn recalled seeing possibly 200 pounds of marijuana in the house at one time, and testified that they also sold ecstasy. She stated only she and Toombs had access to and control over the drugs distributed from the house.

Osborn averred that initially she only made deliveries or engaged in transactions coordinated by Toombs, but that her role gradually increased over time. Eventually she had her own customers and was "more knowledgeable about what she was doing." At some point, she and Toombs made a deal whereby she would have sex with Toombs in return for his teaching her how to cook and sell drugs. However, she stated that Toombs never taught her how to cook crack, she never cooked it, and Toombs was always the one that did so.

Over Toombs' objection, the district court permitted the government to read into evidence the entire transcript of Toombs' testimony from his 2008 trial. In this testimony, Toombs acknowledged having a sexual relationship with Osborn, knowing that she was a drug dealer, and having "spent the night with her maybe one day in October." Toombs nonetheless testified that he did not live at 201 Topeka Avenue and when he visited Osborn there, he did not see any drugs. He denied knowing about or being involved in any drug activity at the home.

Elsewhere in his testimony, Toombs admitted to illegal and unflattering past behavior. Toombs acknowledged that he had pled guilty to cocaine possession in 1999.

He also stated that he had learned to cook crack cocaine at age thirteen and that he "probably" continued to cook and sell drugs after his cocaine possession conviction, but insisted that the last time he sold or cooked drugs was in 2001. Finally, he described in detail his relationships with numerous women and his children from different women.

Toombs was found guilty on six charges: conspiracy to manufacture and distribute cocaine base; possession with intent to distribute cocaine base; possession with intent to distribute cocaine; possession with intent to distribute marijuana; possession of a firearm after a felony conviction; and possession of an unregistered firearm. He was sentenced to concurrent terms of thirty years each on the first three charges and ten years each on the last three charges.

## II

Toombs contends that the district court committed reversible error by admitting the entirety of his testimony from his first trial. We review a district court's ruling on evidence admissibility for abuse of discretion. See United States v. Bautista, 145 F.3d 1140, 1151 (10th Cir. 1998). "Although the abuse of discretion standard is deferential, abuse is shown where the decision was made based upon a mistaken view of the law." United States v. Allen, 449 F.3d 1121, 1125 (10th Cir. 2006).

When a defendant objects to a district court's admission of evidence, we apply the nonconstitutional harmless error standard. See United States v. Jefferson, 925 F.2d 1242, 1255 (10th Cir. 1991). The harmless error doctrine derives from Federal Rule of Criminal Procedure 52(a), which states that "[a]ny error, defect, irregularity, or variance

that does not affect substantial rights must be disregarded." Under this standard, we examine whether the error had a "substantial influence" on the trial outcome or leaves us in "grave doubt" as to whether it had such effect. See Jefferson, 925 F.2d at 1255 (quotations and citations omitted). In making this assessment, the entire record is reviewed de novo, including "the context, timing, and use of the erroneously admitted evidence at trial and how it compares to properly admitted evidence." United States v. Blechman, 657 F.3d 1052, 1067 (10th Cir. 2011). The government bears the burden of proving that a nonconstitutional error is harmless. Id. at 1068.

At trial, Toombs objected to the wholesale admission of his testimony, arguing that certain portions describing his drug conviction, past drug use, and sexual relationships were irrelevant, prejudicial, or improper prior conviction evidence. His objections were overruled by the district court, which stated that because Toombs decided to "waive his right against not testifying under the Fifth Amendment . . . the entire transcript would be admissible." Only when the district court denied Toombs' motion for a new trial did the court retrospectively rule that each challenged portion of Toombs' prior testimony had an independent basis for admissibility and that any alleged error had been harmless.

Although we agree with the district court that the use of prior testimony does not violate a defendant's Fifth Amendment right against self-incrimination, United States v. Hanrahan, 508 F.3d 962, 967 (10th Cir. 2007), it does not follow that Toombs' prior testimony is automatically admissible in its entirety. Nothing in Hanrahan suggests that

prior testimony is exempt from the Federal Rules of Evidence, and we have uncovered no support for this contention in any case addressing the admission of a defendant's prior testimony at a new trial. To the contrary, in the rare instances where courts have faced the question of how to treat a defendant's prior testimony at a second trial where the defendant does not testify, they have indicated that evidentiary rules do apply. As the D.C. Circuit stated in Edmonds v. United States, 273 F.2d 108 (D.C. Cir. 1959), "[t]he fact that the defendant does not take the stand at the second trial does not prevent the use of his testimony given at the former trial, if it would otherwise be admissible." Id. at 113; see also United States v. Grunewald, 164 F. Supp. 644, 646 (S.D.N.Y. 1958) (holding that "prior trial testimony of [the defendant] is properly admissible, assuming it otherwise satisfied the standards of relevancy and materiality"). And in Hanrahan, this court noted that the defendant's prior trial testimony was "not hearsay because . . . it was an admission by a party-opponent" in discussing whether the evidence was properly admitted. 508 F.3d at 967 n.2. Similarly, in United States v. Bohle, 475 F.2d 872 (2d Cir. 1973), the Second Circuit weighed the probative and prejudicial value of a defendant's prior testimony in considering the testimony's admissibility. Id. at 875-76. We therefore conclude that the district court should have evaluated the testimony under the Federal Rules of Evidence before admitting it into evidence.

Nonetheless, reversal of Toombs' conviction is not warranted because even if his prior testimony was admitted in error, such error was harmless. The record contains ample additional evidence of Toombs' guilt. Osborn testified that Toombs had a

-9-

substantial connection to 201 Topeka Avenue's drug-dealing operation, and her testimony was corroborated by visual surveillance and evidence recovered from the home. Officer Naff testified that, based on his extensive surveillance of the house at 201 Topeka Avenue, Toombs and Osborn "appeared to be living there." Naff observed Toombs and Osborn at the residence on a "regular basis." And Naff testified that Toombs had been linked to other drug dealing locations in Leavenworth. In addition, as detailed above, the search of the 201 Topeka Avenue residence uncovered a wide variety of documents bearing Toombs' name or aliases.

Erroneous admission of evidence is harmless in cases where the evidence against a defendant is overwhelming and the trial court issues a proper limiting instruction. United States v. Caldwell, 589 F.3d 1323, 1334 (10th Cir. 2009); United States v. Oberle, 136 F.3d 1414, 1419 (10th Cir. 1998). The district court gave adequate limiting instructions, advising the jury that they should consider Toombs' other acts and prior convictions mentioned in his testimony solely for purposes of intent, knowledge, identity, impeachment, and absence of mistake or accident, and for no other purpose. Accordingly, any error was harmless and does not warrant reversal.

### III

In Toombs' prior appeal in this case, we held that there had been violations of the Speedy Trial Act, and remanded with instructions to determine whether to dismiss his indictment with or without prejudice. Toombs, 574 F.3d at 1276. Toombs claims that the district court erred by dismissing the indictment without prejudice.

We review a district court's decision to dismiss an indictment for violation of the Speedy Trial Act without prejudice for an abuse of discretion.  See United States v. Williams, 576 F.3d 1149, 1157 (10th Cir. 2009).

> When the district court has exercised that discretion, our function is to insure that the statute is effectuated, recognizing that 'when the statutory factors are properly considered, and supporting factual findings are not clearly in error, the district court's judgment of how opposing considerations balance should not lightly be disturbed.'

United States v. Jones, 213 F.3d 1253, 1257 (10th Cir. 2000) (quoting United States v. Taylor, 487 U.S. 326, 337 (1988)).

In determining whether to dismiss a case without prejudice for violation of the Speedy Trial Act, a court "shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of [the Speedy Trial Act] and on the administration of justice."  18 U.S.C. § 3162(a)(2); see also Taylor, 487 U.S. at 333.  "The Supreme Court has indicated that prejudice to the defendant occasioned by the delay should also be considered in determining whether to dismiss an indictment with or without prejudice."  United States v. Cano-Silva, 402 F.3d 1031, 1034-35 (10th Cir. 2005) (citing Taylor, 487 U.S. at 333-34).  Congress did not intend that any particular type of dismissal should serve as the presumptive remedy for a Speedy Trial Act violation.  See Taylor, 487 U.S. at 335.

Considering the first statutory factor, the district court concluded that it weighed in favor of dismissal without prejudice because Toombs' indictment included serious felony

-11-

offenses.  Toombs was charged with one count of possession with the intent to distribute fifty grams or more of cocaine base and one count of being a felon in possession of a firearm.  As Toombs concedes, these charges have been deemed serious offenses by this court.  Williams, 576 F.3d at 1158.  We agree with the district court that this factor weighed in favor of dismissal without prejudice.

The district court also concluded that the second statutory factor, the circumstances leading to dismissal, weighed in favor of dismissal without prejudice.  This factor considers "the culpability of the delay-producing conduct."  United States v. Saltzman, 984 F.2d 1087, 1093 (10th Cir. 1993).  For example, "[w]here the delay is the result of intentional dilatory conduct, or a pattern of neglect on the part of the Government, dismissal with prejudice is the appropriate remedy."  Id. at 1093-94.

We agree that in this case the government did not exhibit a pattern of neglect or intentional delay.  Although the government filed two motions to continue to allow it to locate Osborn and bring her to trial, the first motion was unopposed, and each motion had a legitimate, good faith justification.

Instead, the record indicates that Toombs was at least partially responsible for the delay.  Toombs filed seven of the nine motions for continuance granted in the case.  Furthermore, Toombs did not raise a Speedy Trial Act claim until after the violation occurred.  "[W]hile the court and the government are each partly responsible for effectuating a defendant's right to a speedy trial, a defendant that lets the time run without asserting his rights under the Act has less of a claim to a dismissal with prejudice

than a defendant who makes a timely assertion, but is unheeded." Jones, 213 F.3d at 1257; see also Saltzman, 984 F.2d at 1094. We conclude that the district court did not abuse its discretion in weighing this factor in favor of dismissal.

Finally, the district court determined that the last factor, whether a dismissal without prejudice serves the administration of the Speedy Trial Act and the administration of justice, also weighed in favor of dismissal without prejudice. When evaluating this factor, a court should consider, inter alia, whether the delay caused by the government was intentional and the prejudice suffered by the defendant from the Act's violation. See Williams, 576 F.3d at 1159; United States v. Abdush-Shakur, 465 F.3d 458, 463-64 (10th Cir. 2006). The length of delay is also relevant. Taylor, 487 U.S. at 340.

Toombs contends that this factor should weigh in favor of dismissal with prejudice. In particular, he argues that during the twenty-two month period between his indictment and trial, there were at minimum 350 non-excludable days, five times the statutory limit of seventy days. The district court acknowledged that this delay was substantial and that it "shares in the blame for the delay," but concluded that neither party attempted to abuse the Speedy Trial Act and that the delay was "unintentional." Therefore, the court held that this factor weighed in favor of dismissal without prejudice.

The delay in this case was indeed substantial and "suggests a need for case management better attuned to the Speedy Trial Act." Jones, 213 F.3d at 1258. But given the serious nature of the charged offenses and Toombs' failure to establish that the delay

was a result of intentional dilatory conduct or a pattern of neglect, we cannot say that the district court abused its discretion in dismissing the indictment without prejudice.  See Abdush-Shakur, 465 F.3d at 463-64; Jones, 213 F.3d at 1258.

## IV

**AFFIRMED**.  Because the government's motion to supplement the record on appeal does not present a "rare exception" to Federal Rule of Appellate Procedure 10(e), the motion is **DENIED**.  See United States v. Kennedy, 225 F.3d 1187, 1191-92 (10th Cir. 2000).