NOTICE
Decision filed 04/19/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 180339

NO. 5-18-0339

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Madison County. |
| v. | ) ) | No. 15-CF-1880 |
| ARYION SANDERS, | ) ) ) | Honorable Neil T. Schroeder, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE BOIE delivered the judgment of the court, with opinion.
Justices Moore and Vaughan* concurred in the judgment and opinion.

**OPINION**

¶ 1    A jury convicted defendant, Aryion Sanders, of first degree murder for the shooting death of James Hubbard. The trial court sentenced defendant to 43 years in the Illinois Department of Corrections. On direct appeal from his conviction and sentence, defendant argues, *inter alia*, that the trial court erred in allowing the State to introduce at trial, as substantive evidence, the transcript of defendant's testimony from a prior trial during which defendant was impeached with statements that were excluded as substantive evidence pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). For the following reasons, we reverse defendant's conviction and remand for a new trial.

_____

*Justice Overstreet was originally assigned to participate in this case. Justice Vaughan was substituted on the panel subsequent to Justice Overstreet's election to the Illinois Supreme Court and has read the briefs and listened to the recording of oral argument.

1

¶ 2                                    I. BACKGROUND

¶ 3      During the early morning hours of August 8, 2015, while walking along Oakwood Street in Alton, Illinois, Hubbard was shot four times. Bullet fragments were recovered from Hubbard's body and shell casings were recovered from the area where his body was lying on the street. All of the shell casings and bullet fragments originated from the same .38-caliber semiautomatic weapon. Hubbard died from gunshot wounds to the head. Stippling on Hubbard's skin at the bullets' entry points indicated that the weapon was fired at close range. A surveillance video of the 700 block of Oakwood Street showed Hubbard walking and talking on his cell phone when the shooter appeared on the screen, made his way across the building at 743 Oakwood, and entered a cul-de-sac area, ultimately shooting Hubbard. An investigation led the police to suspect that defendant was the shooter. At the time of the shooting, defendant was 17 years old and lived with his family in a housing unit a few hundred yards from the site of Hubbard's murder. Defendant participated in interviews with the Alton Police Department on August 10, 12, 13, and 14, 2015, in connection with the murder of Hubbard. On September 25, 2015, the State charged defendant with two counts of first degree murder stemming from the shooting. Each count charged defendant with the death of Hubbard based on a different legal theory for murder. Defendant was tried on the murder charges twice. During both of the trials, the primary factual dispute centered on the identity of the shooter. The first trial resulted in a hung jury, and the second trial resulted in the conviction and sentence from which defendant appeals.

¶ 4      Prior to the first trial, on May 16, 2016, defendant filed a motion to suppress his statements to the Alton Police Department in which he confessed to shooting Hubbard. Defendant argued that his statements were obtained in violation of his due process rights under the fourteenth amendment of the United States Constitution (U.S. Const., amend. XIV) and article I, section 2, of the Illinois

2

Constitution (Ill. Const. 1970, art. I, § 2) and, therefore, should be suppressed. Defendant's original motion did not include any argument regarding suppression pursuant to *Miranda*, 384 U.S. 436. It did allege that defendant's statements were involuntary and included a discussion of the test for voluntariness set out in *Hutto v. Ross*, 429 U.S. 28 (1976) (*per curiam*).

¶ 5　Defendant pointed out the factors used to determine whether a confession was voluntary, including whether the confession was extracted by any sort of threats or violence or obtained by any direct or implied promises, however slight, or by the exertion of any improper influence. *Id.* at 30. Defendant argued that the interrogation was lengthy, having occurred over four days, and deprived defendant of the ability to see his family, a friend, or an attorney. Defendant argued that law enforcement extracted his confession through coercion, by threatening defendant that his younger brother would be arrested, or even shot and killed.

¶ 6　A hearing on the motion was held on July 27 and 28, 2016. On August 11, 2016, the State filed a memorandum and supplemental argument regarding defendant's motion to suppress. In its memorandum, the State conceded that defendant invoked his right to remain silent in the third interview and that it was not honored. Therefore, the State conceded that it would be appropriate for the trial court to suppress any questions or answers that came after defendant's assertion of his rights, which would be the last 20 minutes of the interview. The State argued that the confession given by defendant in the fourth interview should not be suppressed and was not fruit of the poisonous tree.

¶ 7　On August 22, 2016, defendant filed a memorandum in support of his motion to suppress, arguing that defendant's confession given at the end of his third interview was involuntary and a result of coercive tactics by the police. Defendant then argued that the confession obtained during the fourth interview should be suppressed pursuant to the exclusionary rule announced in *Miranda*.

3

*Miranda*, 384 U.S. at 473-74. The motion to suppress statements was partially granted by written order of the trial court on March 14, 2017.

¶ 8    Defendant's motion was denied as to the first interview, during which defendant had made no inculpatory statements. The trial court held that, during defendant's second interview, defendant clearly and unequivocally asserted his right to remain silent and that, despite this assertion, the interview continued. Defendant had not made any inculpatory statements during the second interview. In defendant's third interview, the trial court found that defendant again told officers that he did not want to talk anymore and that request was ignored. In addition, defendant requested to speak with the juvenile officer and that request was ignored. After a lengthy exchange with the officers, defendant eventually confessed that he had shot Hubbard. Later during the interview, when asked how many times he had fired, defendant stated that he was lying about shooting Hubbard and that he only said that because he did not want his little brother to get into trouble.

¶ 9    The trial court found that the third interview was inadmissible based on defendant's invocation of his right to remain silent during his second interview. The trial court ruled that defendant's right to remain silent was not scrupulously honored in the second interview, which continued after he invoked his right to remain silent. The third interview was an interrogation for the same crime, further weighing in favor of suppression. The trial court noted that defendant again invoked his right to remain silent in the third interview and was again ignored. In addition to finding a *Miranda* violation, the trial court also found the following relevant to the voluntariness of defendant's confession:

> "the detectives created a coercive environment which ultimately overcame the will
> of the defendant. This is demonstrated in the lengthy portion of the transcript set
> forth above. The detectives did this by threatening the arrest of the defendant's

4

younger brother unless the defendant told them what happened. On cross-examination, Detective O'Neill admitted that the arrest of the defendant's brother was a 'threat intended to elicit an emotional response.' A distinct scenario was explained to the defendant. This was done both verbally and by the detective's actions in directing other officers to immediately leave the police station and arrest the brother. The detectives explained to the defendant that his fifteen year old brother would be arrested at gunpoint. During that arrest, a shootout might occur. His brother would then be having a 'long, long, long night' and be placed in a cell with someone the detective 'hoped wasn't a really bad guy.' "

The trial court suppressed all statements made during the third interview.

¶ 10    The trial court then turned to the fourth interview, which was conducted at defendant's request. During this interview, defendant again told officers that he was lying during the prior interview to keep the officers from arresting his younger brother as they had threatened. After another 35 minutes of the detectives speaking primarily between themselves, explaining why defendant should cooperate and explaining his involvement in the murder, defendant again made inculpatory statements. The trial court suppressed the fourth interview because defendant's invocation of his right to remain silent in his third interview was not scrupulously honored.

¶ 11    The State filed a notice of intent to introduce defendant's suppressed statements at trial for purposes of impeachment if defendant chose to testify. The State noted that while a suppressed statement cannot be used in the State's case-in-chief, if a defendant elects to testify, the State can impeach a defendant with his prior statements. Defendant did not object to the State's notice of intent. The trial court began the first trial on September 11, 2017.

5

¶ 12    At the first trial, defendant testified, and during cross-examination, the State questioned defendant about the suppressed statements in an effort to impeach his credibility. The statements were admitted in defendant's first trial for impeachment purposes only and not as substantive evidence of defendant's guilt. This first trial resulted in a mistrial due to a hung jury, and the State elected to retry the defendant.

¶ 13    Prior to the beginning of defendant's second trial the State filed a notice of intent to introduce a certified transcript of defendant's testimony given under oath at his first trial. The State maintained that it was entitled to introduce defendant's testimony from his first trial as a statement by a party opponent, noting that defendant's statements were admissible under Rule 801(d)(2)(A) of the Illinois Rules of Evidence (Ill. R. Evid. 801(d)(2)(A) (eff. Oct. 15, 2015)). Defendant objected, arguing that he would be prejudiced by the admission of his prior testimony if he chose not to testify in the second trial. Defendant further argued that the admission of the prior testimony could limit his defense. The trial court ruled that defendant's prior testimony was admissible as a statement against interest and allowed a copy of the transcript of defendant's prior testimony to be read into evidence in the State's case-in-chief and considered as substantive evidence.

¶ 14    The transcript was edited by the State to redact sustained objections and the mention of an outburst that defendant had during the first trial.[1] Defense counsel was given a copy of the transcript, including the redactions, that the State was seeking to introduce in its case-in-chief and was given an opportunity to review it and suggest any further redactions that defendant believed

---

[1]The transcript was read into evidence in the State's case-in-chief and included a reference by the prosecution to an outburst by defendant in the first trial. As the first trial transcript is not a part of the record, it is unclear whether this is the same outburst which the State agreed to redact based on its belief that it was prejudicial to the defendant. The defendant has not raised any issues concerning the redaction of the trial transcript within this appeal.

were required. Defendant did not request any further redaction, and it does not appear from the record before this court that the matter was revisited prior to the transcript's introduction at trial.

¶ 15    During the second trial, the State called several witnesses to testify about events before and after the shooting, including defendant's younger brother, defendant's friend, and various police and forensic witnesses. As noted above, the factual dispute at the heart of the trial was the identity of the shooter.

¶ 16    The court reporter read the transcript of defendant's first trial testimony to the jury. In his prior testimony, defendant offered his version of the events that occurred on August 7 and 8, 2015. During direct examination in the first trial, defendant testified that on the day of the shooting, he wanted to go with his friends to the Six Flags amusement park, but he was not allowed to go. He met up with his friends later that evening before deciding to head home to eat and go to bed. He went home, took Advil medicine, and went to sleep. He testified that he did not become aware of Hubbard's death until the next day, when his friends told him that there were police in the area because Hubbard had been shot.

¶ 17    The transcript that was read to the jury included questions asked by the State at the first trial during its cross-examination of defendant. The State asked defendant about the interviews that were conducted by the Alton Police Department related to the shooting. Defendant's responses included both his denials and affirmations that he had told officers on two occasions that he shot Hubbard, and an admission that defendant told officers that he threw the gun into the woods. Although he admitted to making those statements to the officers, during his testimony, defendant asserted that those were false confessions. The transcript included defendant's explanation during the first trial that he only admitted to the shooting because he was scared for his younger brother based on threats made by officers. Defendant did not testify during the second trial. The transcript

7

was introduced in the State's case-in-chief and was admitted as substantive evidence of defendant's guilt. The jury found defendant guilty, and the trial court sentenced defendant to 43 years in prison.

¶ 18    Defendant filed a posttrial motion requesting a new trial and alleged: (1) that defendant was unduly prejudiced when the State introduced evidence of the previously suppressed confession to the jury and (2) that defendant was prejudiced by the presence of a member of the jury (juror 19) who failed to disclose her bias against African-American males and her multiple convictions. In his memorandum in support of the motion, defendant argued that the trial court erred in permitting the use of the transcript of his testimony during his first trial as substantive evidence of guilt because it contained statements that had been suppressed pursuant to a violation of *Miranda*. Defendant also noted in his memorandum that "[t]he purpose of the suppression of these statements was because they were secured under circumstances which were highly coercive and thus unreliable." Defendant argued that his suppressed statements introduced during his first trial could be used for impeachment purposes only in the second trial. Defendant further argued that juror 19 failed to disclose a "bias against African-American males [as well as] multiple conviction[s]." Based on the resolution of defendant's first issue, we do not reach the arguments relating to juror 19. The trial court denied defendant's posttrial motion, and defendant now appeals his conviction and sentence.

¶ 19                                    II. ANALYSIS

¶ 20    Defendant argues that the trial court abused its discretion when it granted the State's notice of intent to introduce a certified transcript of defendant's testimony given under oath at his first trial. Defendant claims that it was error to allow the State to introduce at trial, as substantive evidence offered during its case-in-chief, the transcript of defendant's testimony from his first trial.

8

Defendant argues that the introduction of the transcript was an abuse of discretion because it included several references to statements that were previously suppressed based on a violation of defendant's rights under the fifth and sixth amendments[2] to the United States Constitution (U.S. Const., amends. V, VI). Defendant claims that the previously suppressed evidence was only admissible for purposes of impeachment. Defendant further argues that the State's use of his trial testimony in its case-in-chief violated defendant's right against self-incrimination by forcing his testimony before the jury when he elected not to testify in his second trial. Finally, defendant argues that his testimony at his first trial did not waive his constitutional protections under the fifth and fourteenth amendments to the United States Constitution (U.S. Const., amends. V, XIV) to justify the State's use of his suppressed statements in his first or second trial. This court reviews the decisions of a trial court concerning the admission of evidence under the abuse of discretion standard of review. *People v. Bryant*, 391 Ill. App. 3d 228, 244 (2009).

¶ 21    The State used defendant's testimony given during his first trial, which was inclusive of several suppressed inculpatory statements, as substantive evidence during its case-in-chief during defendant's second trial. The State presented the transcript of defendant's prior testimony by

[2]Defendant's brief mentions the sixth amendment on three occasions, each in a heading, alleging that the defendant's statements were suppressed upon a finding of a violation of the defendant's sixth amendment rights. Defendant does not argue in his brief how the admission of his statements violated his sixth amendment rights, nor was that argued before the trial court. Additionally, the trial court's order does not cite the sixth amendment as a basis for suppression. It is of note that, during a pretrial hearing on the State's motion to prohibit defense counsel from referencing defendant's request for an attorney, the trial court held, on March 15, 2018, as follows:

"So the Court ruled on the defendant's motion to suppress. The Court's watched these videotaped statements. And having viewed them, I think referring to it as a request for counsel is misleading. That certainly implies an attorney professional. And my recollection is that that is not what he asked for. He never asked for an attorney. He never asked for counsel."

In the present appeal, because defendant has never argued any facts showing a violation of defendant's sixth amendment rights, including before this court, and this court has no basis to believe the trial court ruled that the original statements were taken in violation of defendant's sixth amendment rights, we do not analyze this case in the context of the sixth amendment.

reading the transcript into evidence. Defendant objected to such use before trial and preserved that objection in a timely posttrial motion. Defendant argues on appeal that such use was an abuse of discretion in that it violated defendant's rights to due process pursuant to the fifth and fourteenth amendments.

¶ 22                              A. Basis for Initial Suppression

¶ 23    In order to determine whether defendant's prior testimony was properly introduced in his second trial, it is necessary to consider the reasons why defendant's statements were suppressed, why they were allowed to be used during his first trial, and for what purpose. Defendant made confessions to shooting Hubbard during both his third and fourth interviews with police. Defendant, in his brief to this court, argues that his statements made to the investigating officers were suppressed because they were obtained in violation of the fifth amendment. The State does not reference why defendant's statements were originally suppressed but acknowledges that they were.

¶ 24    The trial court entered a lengthy written order on March 14, 2017. According to the trial court's written order, defendant's statements made during his third and fourth interviews were suppressed based on a violation of *Miranda*, because the trial court found that defendant had invoked his right to remain silent and that request was not scrupulously honored. Additionally, the trial court found that defendant's statements taken during his third interview were coerced by threats from the officers which overbore the will of the defendant. Therefore, those statements were found to be involuntary.

¶ 25    It is clear that a defendant who takes the stand may ordinarily be impeached by proof of prior inconsistent statements. *People v. Ladas*, 12 Ill. 2d 290, 294 (1957). Such evidence is not admitted as proof of the truth of the facts stated out of court but to cast doubt on the testimony of

10

the witness by showing his inconsistency, and an instruction to that effect should be given upon request. *People v. Kelly*, 22 Ill. App. 3d 908, 915 (1974).

¶ 26    Defendant argues on appeal that his statements were improperly introduced during his first trial because his direct testimony did not justify the introduction, through cross-examination, of his suppressed statements. Defendant further argues that, where the introduction in the first trial for purposes of cross-examination was improper, any references to the suppressed statements in the State's case-in-chief were unconstitutional pursuant to the defendant's right to due process and pursuant to the fifth and fourteenth amendments.

¶ 27    The defendant cites Justice Brennan's dissent in *United States v. Havens*, 446 U.S. 620 (1980), for the proposition that "impeachment by cross-examination about—or introduction of— suppressible evidence must be warranted by defendant's statements upon direct questioning." *Id.* at 630 (Brennan, J., dissenting). However, the majority in that case held that a defendant's statements made in response to proper cross-examination reasonably suggested by the defendant's direct examination are subject to otherwise proper impeachment by the prosecution, albeit by evidence that has been illegally obtained and is inadmissible as substantive evidence of guilt. *Id.* at 627-28 (majority opinion).

¶ 28    In *Havens*, the defendant testified and denied that he had ever engaged in the activity of taping or draping cocaine around his body. *Id.* at 622. On cross-examination, the government asked whether the respondent had anything to do with sewing makeshift pockets on codefendant's T-shirt and whether he had a T-shirt with pieces missing in his luggage, and he denied both questions. *Id.* The government was allowed to introduce a previously suppressed T-shirt found in the respondent's luggage that was missing pieces that matched pieces sewn into the codefendant's T-shirt during rebuttal for purposes of impeaching respondent's credibility. *Id.* The *Havens* case does

11

give some guidance in the proper use of suppressed evidence for purposes of cross-examination or rebuttal evidence. However, in the present case, defendant was impeached during cross-examination with statements suppressed pursuant to a violation of the prophylactic rules of *Miranda*, as well as involuntary statements based on testimony given by the defendant during his direct examination. The defendant's statements given on direct examination were contradicted by his suppressed statements to officers. As such, *Havens*, does not support defendant's contention that he did not, in his first trial, invite cross-examination with his suppressed statements.

¶ 29                    1. Statements Suppressed Based on a Violation of *Miranda*

¶ 30    The exclusionary rule is a judicially created rule that aims to prevent evidence obtained in violation of certain constitutional rights from being used against the defendant in a criminal proceeding. *People v. Maron*, 2019 IL App (2d) 170268, ¶ 54. The purpose of the exclusionary rule is to deter unlawful police conduct in the future. *Id.* The exclusionary rule is not a personal constitutional right of the aggrieved party and is not concerned with situations where the introduction of the unlawfully obtained evidence would itself exacerbate or constitute a violation. *Id.*

¶ 31    The United States Supreme Court has explained that whether otherwise excluded evidence can be admitted for purposes of impeachment depends upon the nature of the constitutional guarantee that is violated. *Kansas v. Ventris*, 556 U.S. 586, 590 (2009). For instance, the fifth amendment is typically violated when a coerced confession is introduced at trial, whether substantively or for impeachment purposes. *Id.* The introduction of the evidence is itself a violation, and the evidence should be barred. *Id.* In contrast, the fourth amendment is violated when the person is subjected to an unreasonable search or seizure, not when the fruits of that search or seizure are introduced at trial. *Id.* at 591. Therefore, inadmissibility based on a fourth

12

amendment violation is not automatic; rather, admissibility is determined according to the exclusionary-rule balancing test. *Id.* The same can be true for a fifth or sixth amendment violation, if the violation was due to improper police conduct and not due to the very fact of the introduction of the evidence at trial. *Id.* In those instances, prophylactic considerations apply, and the court should conduct the exclusionary-rule balancing test to determine admissibility. *Id.*

¶ 32    Regarding the defendant's statements taken in violation of *Miranda*, the United States Supreme Court recognized an exception to the exclusionary rule in *Walder v. United States*, 347 U.S. 62 (1954), permitting the prosecutor to introduce evidence obtained through an illegal search, a fourth amendment violation, to undermine the credibility of defendant's claim that he had never possessed narcotics. The Court explained that a defendant is free to deny all of the elements of the case against him without thereby giving leave to the government to introduce by way of rebuttal evidence illegally secured by it and therefore not available for its case-in-chief. However, there is hardly justification for allowing the defendant to affirmatively resort to perjurious testimony in reliance on the government's disability to challenge his credibility. *Id.* at 65.

¶ 33    The Supreme Court has insisted that "evidence that has been illegally obtained . . . is inadmissible on the government's direct case, or otherwise, as substantive evidence of guilt." (Internal quotation marks omitted.) *James v. Illinois*, 493 U.S. 307, 313 (1990). However, the Court believed that permitting the use of such evidence to impeach a defendant's testimony would further the goal of truth-seeking by preventing defendants from perverting the exclusionary rule into a license to use perjury by way of a defense. *Id.* The Court further believed that such use would create only a speculative possibility that impermissible police conduct would be encouraged and thereby concluded that the balance of values underlying the exclusionary rule justified an exception covering impeachment of a defendant's testimony. *Id.*

13

¶ 34    The *Miranda* exclusionary rule may be triggered even in the absence of a fifth amendment violation. *Oregon v. Elstad*, 470 U.S. 298, 306 (1985). A *Miranda* violation does not constitute compulsion but simply affords a bright-line, legal presumption of compulsion whenever a suspect's statements are not preceded by *Miranda* warnings. *Id.* at 307. The presumption of compulsion renders unwarned statements inadmissible in the prosecution's case-in-chief, even if those statements might be considered "voluntary" within the meaning of the fifth amendment. *Id.* Despite the fact that voluntary statements taken in violation of *Miranda* must be excluded from the prosecution's case, the presumption of coercion does not bar their use for impeachment purposes on cross-examination. *Harris v. New York*, 401 U.S. 222, 224 (1971).

¶ 35    The facts in the present case are similar to those in *Harris*, 401 U.S. 222, and *Oregon v. Hass*, 420 U.S. 714 (1975), where the Court upheld the use of statements taken in violation of *Miranda* therefore unusable by the prosecution as part of its own case but admissible to impeach statements made by defendant in the course of his direct testimony. The *Harris* Court also made clear that impeachment by otherwise inadmissible evidence is not limited to collateral matters. *Harris*, 401 U.S. at 225. In *Harris*, the defendant's testimony concerning the events occurring on the night of the crime contrasted sharply with what he told the police shortly after his arrest. The Court held that the defendant's statements, suppressed pursuant to the prophylactic rules of *Miranda*, could be used to impeach the defendant's testimony. *Id.* Similarly, in *Oregon v. Hass*, the defendant requested an attorney and, without being provided one, showed an officer where stolen property was located. *Hass*, 420 U.S. at 715-16. The statements made after the defendant requested an attorney were suppressed pursuant to *Miranda*. *Id.* at 716. The *Hass* Court ruled that "[a]s in *Harris*, it does not follow from *Miranda* that evidence inadmissible against Hass in the

14

prosecution's case in chief is barred for all purposes, always provided that 'the trustworthiness of the evidence satisfies legal standards.' " *Id.* at 722 (quoting *Harris*, 401 U.S. at 224).

¶ 36 In the present matter, defendant testified and gave his version of events occurring on the night of the murder. That version conflicted with the suppressed statements that he had previously made to police, wherein he admitted that he shot Hubbard, described the path that he ran after shooting Hubbard, and described where he hid the gun. During cross-examination, defendant was confronted with his prior statements and admitted to their making. Therefore, as to statements made by defendant that were suppressed pursuant to *Miranda*, those statements made during his fourth interview, there was no error in the trial court allowing the statements to be used in the defendant's first trial for purposes of impeachment.

¶ 37 2. Involuntary Statements

¶ 38 The trial court in this matter found that both of defendant's confessions were obtained in violation of the prophylactic rules developed in *Miranda*. The admissibility of those statements in cross-examination required the trial court to engage in the exclusionary-rule balancing test. However, the trial court also found that the police tactics used in defendant's interrogation during his third interview rendered the statements involuntary, where they overbore the defendant's will. The trial court held as follows:

"The Court also finds that the detectives created a coercive environment which ultimately overcame the will of the defendant. This is demonstrated in the lengthy portion of the transcript set forth above. The detectives did this by threatening the arrest of the defendant's younger brother unless the defendant told them what happened. On cross-examination, Detective O'Neill admitted that the arrest of the defendant's brother was a 'threat intended to elicit an emotional response.' A

15

distinct scenario was explained to the defendant. This was done both verbally and by the detective's actions in directing other officers to immediately leave the police station and arrest the brother. The detectives explained to the defendant that his fifteen year old brother would be arrested at gunpoint. During that arrest, a shootout might occur. His brother would then be having a 'long, long, long night' and be placed in a cell with someone the detective 'hoped wasn't a really bad guy.' "

¶ 39 Generally, the question in voluntariness cases is "whether the defendant's will was overborne at the time he confessed." *Lynumn v. Illinois*, 372 U.S. 528, 534 (1963). It is difficult to interpret the trial court's ruling as anything other than a finding that defendant's confession given during his third interview was involuntary.

¶ 40 The due process clause of the fourteenth amendment guarantees that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend. XIV, § 1. The United States Supreme Court "has long held that certain interrogation techniques, either in isolation or as applied to the unique characteristics of a particular suspect, are so offensive to a civilized system of justice that they must be condemned under the Due Process Clause." *Miller v. Fenton*, 474 U.S. 104, 109 (1985). Courts frame the legal inquiry usually through asking whether the defendant's confession was voluntary. *Id.*; *People v. Davis*, 35 Ill. 2d 202, 205 (1966) ("The constitutional test for the admission of a confession in evidence is whether the confession was made freely, voluntarily and without compulsion or inducement of any sort."). Also, the fifth amendment commands in pertinent part that no person shall be compelled in any criminal case to be a witness against himself or herself. U.S. Const., amend. V. The fifth amendment's self-incrimination clause applies to the states through the due process clause of the fourteenth amendment. *Malloy v. Hogan*, 378 U.S. 1, 6 (1964).

16

¶ 41 A fundamental principle of criminal procedure is that a confession must be voluntary; otherwise, it is inadmissible. *People v. Melock*, 149 Ill. 2d 423, 447 (1992). The Illinois Supreme Court has held that the voluntary character of an out-of-court statement must be established before it may be used even for impeachment purposes. See *People v. Adams*, 1 Ill. 2d 446, 451 (1953); *People v. Hiller*, 2 Ill. 2d 323, 327 (1954); *People v. Tate*, 30 Ill. 2d 400, 405 (1964). Compelled incriminating statements are inadmissible for impeachment purposes. *Mincey v. Arizona*, 437 U.S. 385, 398 (1978). A criminal defendant is denied due process of law if his conviction is based, wholly or partially, on the admission of testimony concerning that defendant's involuntary confession. *Id.* "Compelled or involuntary statements are excluded under the fifth amendment, not as a means of deterring unlawful police conduct, but because such statements are regarded as inherently untrustworthy and, thus, not probative." *People v. Winsett*, 153 Ill. 2d 335, 352 (1992).

¶ 42 Based on the above, it is clear that the State should have been precluded from using the defendant's inculpatory statements obtained during his third interview, ruled by the trial court to be involuntary, for purposes of impeachment during the defendant's first trial. Nonetheless, they were allowed to be used during cross-examination without objection when defendant testified. Such use was a violation of defendant's rights under the fifth amendment and to due process of law.

¶ 43 B. Admissibility of Suppressed Statements at Second Trial

¶ 44 The next question is whether the testimony given during defendant's cross-examination at his first trial was admissible in a future hearing or trial as substantive evidence. The general rule regarding a defendant's earlier trial testimony is that it is admissible against him at a later trial. *Harrison v. United States*, 392 U.S. 219, 222 (1968). A defendant who chooses to testify waives his privilege against compulsory self-incrimination with respect to the testimony he gives. *Id.* In

17

permitting testimony from the first trial to be used in the second trial, it is assumed that a defendant voluntarily availed himself of his right to testify during the earlier proceeding. See *People v. Moore*, 19 Ill. App. 3d 334, 342 (1974).

¶ 45    The State argues that the transcript of defendant's prior testimony was properly admitted as substantive evidence during defendant's second trial under Rule 801(d)(2)(A) of the Illinois Rules of Evidence. Ill. R. Evid. 801(d)(2)(A) (eff. Oct. 15, 2015). The party-admission doctrine is an exception to the hearsay rule. *People v. Ramsey*, 205 Ill. 2d 287, 294 (2002). A statement by a party-opponent is not hearsay if it "is offered against a party and is *** the party's own statement." Ill. R. Evid. 801(d)(2)(A) (eff. Oct. 15, 2015); see also *People v. Aguilar*, 265 Ill. App. 3d 105, 113 (1994). Such evidence is admissible if it is relevant to an issue in dispute and its probative value is not substantially outweighed by its prejudicial effect. *Aguilar*, 265 Ill. App. 3d at 113.

¶ 46    The State cites *United States v. Reed*, 227 F.3d 763 (7th Cir. 2000), for the proposition that defendant's prior testimony, inclusive of cross-examination, was admissible regardless of whether it was inculpatory or exculpatory and that the prior testimony was admissible under Rule 801(d)(2)(A) of the Federal Rules of Evidence[3] (Fed. R. Evid. 801(d)(2)(A)), which is identical to Rule 801(d)(2)(A) of the Illinois Rules of Evidence. The Illinois rule provides as follows: "A statement is not hearsay if *** [t]he statement is offered against a party and is *** the party's own statement, in either an individual or a representative capacity ***." Ill. R. Evid. 801(d)(2)(A) (eff. Oct. 15, 2015). The State correctly points out that *Reed* is not binding on this court but is persuasive

---

[3]The Federal Rule of Evidence 801(d)(2)(A) excludes admissions by a party-opponent (which are offered against the party) from the definition of hearsay because the adversarial process allows the party-declarant to rebut his or her own admissions by testifying at trial. See Fed. R. Evid. 801(d)(2) & Advisory Committee Note ("Admissions by a party-opponent are excluded from the category of hearsay on the theory that their admissibility in evidence is the result of the adversary system rather than satisfaction of the conditions of the hearsay rule."); *United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005).

authority, especially where the Illinois rule is modeled after the federal rule. *People v. Craigen*, 2013 IL App (2d) 111300, ¶ 44.

¶ 47 However, the *Reed* case is factually distinguishable, as the court in that case was not deciding whether the defendant's testimony about evidence that was subject to a suppression order based on *Miranda*, the fifth amendment, or due process was properly admitted during a subsequent trial as substantive evidence. In the present case, the issue of the admissibility of defendant's suppressed statements does not hinge on whether they are hearsay, but whether the statements continued to be subject to the trial court's suppression order. An out-of-court statement that is not hearsay may, nonetheless, be inadmissible due to other rules of evidence. The fact that a statement is not hearsay does not mean that it is not inadmissible for other reasons, such as the exclusionary rule. *Reed*, therefore, offers us little guidance in the present case.

¶ 48 In general, under the law of the case doctrine, a rule established as controlling in a particular case will continue to be the law of the case, provided the facts remain the same. *People v. Patterson*, 154 Ill. 2d 414, 468 (1992). In *People v. Henderson*, 36 Ill. App. 3d 355 (1976), the court noted that once a motion to suppress has been ruled upon by one judge, that motion cannot be relitigated later before another judge, absent a showing of exceptional circumstances or of additional evidence that has become available since the first hearing to suppress. *Id.* at 370. The State's position is that the cross-examination of defendant during his first trial with his suppressed statements was proper to impeach statements made by defendant during his direct examination. The lawful questioning resulted in new, legally obtained statements, made under oath, by a party opponent that the State could then use substantively in its case-in-chief during the retrial of defendant.

¶ 49 Defendant's testimony acknowledged that he made the suppressed confessions. We have answered the question above regarding the admissibility of involuntary confessions for purposes of cross-examination and found that defendant's statements obtained during his third interview should not have been used by the State as impeachment evidence. There was no objection to the impeachment evidence and defendant's first trial resulted in a mistrial. However, the improper use of defendant's confessions for purposes of impeachment did not create new, lawfully obtained confessions that the State could then use as substantive evidence. In fact, the admission in defendant's first trial of his coerced confession was itself a violation of his fifth amendment rights, as well as his right to due process. The fifth amendment is typically violated when a coerced confession is introduced at trial, whether substantively or for purposes of impeachment. *Ventris*, 556 U.S. at 590. The fact that the statements were improperly admitted during cross-examination of defendant for purposes of impeachment did not mitigate the damage to defendant where the jury heard a nonprobative, coerced confession and defendant's admission to its making. The admission of defendant's coerced statements, even where admitted during cross-examination by the State, was an abuse of discretion. As such, their admission during the State's case-in-chief was a fifth amendment violation and an abuse of discretion.

¶ 50 Regarding defendant's statements suppressed pursuant to *Miranda*, the use of those statements for purposes of impeachment during the first trial would have been subject to the exclusionary-rule balancing test. The test for applying the exclusionary rule requires weighing the likelihood of deterring future police misconduct against the costs of withholding reliable information from the truth-seeking process. *Maron*, 2019 IL App (2d) 170268, ¶ 55. The application of the balancing test typically bars unlawfully obtained evidence from being used *substantively* at trial. *Id.* ¶ 56. The fact that the exclusionary rule should bar such evidence at trial

20

is so often taken for granted that we rarely see the balancing test performed in that context. *Id.* Instead, the balancing test is most often used to determine whether the exclusionary rule should be extended beyond its typical use to also bar unlawfully obtained evidence for nonsubstantive, impeachment purposes at trial. *Id.*

¶ 51 The State is correct in asserting that Rule 801(d)(2)(A) of the Illinois Rules of Evidence generally justifies the use of defendant's prior testimony in the State's case-in-chief. Such statements made by a defendant under oath while testifying at his first trial are not hearsay pursuant to the evidentiary rules. Rule 801(d)(2)(A) embodies the traditional rule that any statement of an accused may be used against him as an admission except as may be excluded by the doctrine of confessions or the privilege against self-incrimination. *People v. Garcia*, 95 Ill. App. 3d 792, 800 (1981).

¶ 52 It does not follow that the portion of defendant's testimony in which he acknowledges the making of statements that were the subject of the trial court's suppression order, presented in the first trial for purposes of impeachment and thus to be considered by the trier of fact only for purposes of determining the credibility of defendant, was transmuted into substantive evidence by the hearsay rules. Rule 801(d)(2)(A) does not trump the exclusionary rule since Rule 801(d)(2)(A) does not address the exclusionary rule in any aspect. The exclusionary rule and hearsay rule are two entirely different concepts, and there are different policy goals and evidentiary rules that govern the basis for their exclusion from a trial. To be admissible against defendant, nonhearsay evidence still must be relevant and not inadmissible for other reasons beyond hearsay, such as the exclusionary rule.

¶ 53 In the 49-year history of *Miranda*, we are unable to find a reported case that has allowed suppressed statements to be used as substantive evidence as the trial court has done in the present

case. The State has cited no authority expanding the use of suppressed statements in this manner, and the court's research has, likewise, not revealed authority from any jurisdiction sanctioning the use of statements suppressed pursuant to the exclusionary rule as substantive evidence. Had defendant made new statements while testifying, such as admissions to committing the crime, those statements would of course be admissible in a future trial. However, where the statements made during defendant's testimony were simply an acknowledgment of the making of the suppressed statements, the testimonial acknowledgments remain subject to the suppression order. Those statements would remain admissible only for purposes of impeachment, should the defendant have chosen to testify inconsistently during his second trial. The First District held in *Garcia* that the admission of defendant's written statement, which included admissions made by defendant encompassing references to previously suppressed evidence, was error, even though they were admissions of defendant. *Garcia*, 95 Ill. App. 3d at 800-01. Rule 801(d)(2)(A) does not circumvent the exclusionary rule or the fifth and fourteenth amendments to the United States Constitution.

¶ 54    The balancing approach in *Walder* and its progeny does not justify expanding the scope of the impeachment exception to permit prosecutors to use an illegally obtained confession to impeach the credibility of a defendant and then, if a mistrial occurs, to use the defendant's admission to the making of the suppressed statements substantively in a subsequent trial on the same issue. If such a rule were approved, there would be no justification to limit the use of the evidence to impeachment in the first trial, and the reasoning in *Harris* would be given little effect. The evidence the State introduced at defendant's second trial is the exact same evidence that the jury heard in the first trial, except that it was read from a transcript instead of presented by live witnesses.

¶ 55    The State cites section 115-10.1(c)(2)(B) of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-10.1(c)(2)(B) (West 2018)) as additional authority for using the defendant's suppressed confession as substantive evidence. The State argues that the defendant's statements could have been used substantively during his first trial based on section 115-10.1(c)(2)(B), which excepts from the definition of hearsay a statement that narrates, describes, or explains an event or condition of which the witness had personal knowledge if the witness acknowledged under oath the making of the statement at a trial, hearing, or other proceeding. *Id.* The defendant's confession was not admitted substantively during the first trial, nor could it have been. Procedural rules that define hearsay and establish exceptions to the hearsay rule do not control the admissibility of evidence that must be excluded for reasons other than hearsay. In the present case, defendant's confession was barred from use in the State's case-in-chief by the exclusionary rule, not the hearsay rule.

¶ 56    At the first trial, the defendant's confession, if it were not suppressed, would have also been excepted from the definition of hearsay under Rule 801(d)(2)(A) of the Illinois Rules of Evidence. Ill. R. Evid. 801(d)(2)(A) (eff. Oct. 15, 2015). However, the statements were not introduced as substantive evidence despite the hearsay rules because they were suppressed under the exclusionary rule and the fifth and fourteenth amendments to the United States Constitution.

¶ 57    Rule 801(d)(2)(A) of the Illinois Rules of Evidence is an evidentiary rule excluding prior statements of the defendant from the definition of hearsay. *Id.* The exception penalizes defendants for committing perjury by allowing the prosecution to expose their perjury through impeachment using illegally obtained evidence. Thus, defendants are discouraged in the first instance from "affirmatively resort[ing] to perjurious testimony." *Walder*, 347 U.S. at 65. But the exception leaves defendants free to testify truthfully or exercise their rights under the fifth amendment to

23

choose not to testify; they can offer probative and exculpatory evidence to the jury without opening the door to impeachment by carefully avoiding any statements that directly contradict the suppressed evidence. The exception thus generally discourages perjured testimony without discouraging truthful testimony.

¶ 58    Where defendant did not testify in his second trial, there was no justification for the use of his suppressed statements as impeachment evidence. There was no possibility that he could pervert the exclusionary rule into a license to use perjury by way of a defense. In the second trial, defendant did not in any way present evidence through his own testimony that would have directly contradicted his suppressed statements because defendant gave no testimony at all. As such, the State was stripped of the necessity to utilize the narrow exception to the exclusionary rule carved out in *Harris*.

¶ 59    There was no appeal between the mistrial and the second trial. The ruling rendered during the first trial that defendant's statements during the police interrogation were not admissible except for impeachment purposes remained in effect at the second trial. The constitutional reasons for excluding the evidence did not change from defendant's first trial to his second trial. This court does not find the State's argument compelling that defendant's testimony during cross-examination rendered the suppressed statements no longer subject to the exclusionary rule. Defendant's trial testimony, where it referenced voluntary statements that remained subject to the exclusionary rule, was admissible for purposes of impeachment where defendant testified in direct contradiction to his suppressed statements. Defendant's involuntary statements remained inadmissible for impeachment purposes or substantively. Rule 801(d)(2)(A) does not operate to make illegally acquired, nonprobative, and suppressed evidence admissible as substantive evidence.

¶ 60    In reaching our conclusion that the suppressed evidence was improperly used as substantive evidence in the second trial, we are persuaded by the analysis set out in *People v. Barton*, 286 Ill. App. 3d 954 (1997). In *Barton*, a witness, McGuire, testified at defendant's first trial and was impeached with her prior inconsistent statement, a statement given to police in which the witness stated that defendant admitted to her that he had been involved in the murder. *Id.* at 960. McGuire testified at the first trial that defendant was with her the entire evening that the crime was committed and that he made no mention to her about a shooting on that date. *Id.* The State then confronted McGuire with a four-page statement that she had given to a police officer wherein she stated that defendant told her that a white female came to the front door of the trailer and fired a shot and defendant fired a shot in return. *Id.* at 961.

¶ 61    Defendant argued that he was denied a fair trial due to the State's use of McGuire's prior inconsistent statement as substantive evidence at defendant's second trial. *Id.* at 960. McGuire failed to appear at the second trial, and the trial court allowed her testimony from the first trial to be read into evidence. *Id.* On appeal, this court noted: "It is black-letter law that a witness's prior inconsistent statement is admissible only to attack his credibility and cannot be admitted as proof of the substance of the statement." *Id.* at 961 (citing *People v. Gant*, 58 Ill. 2d 178, 185 (1974)).

¶ 62    A review of McGuire's testimony made it obvious that the State's introduction of McGuire's testimony from the first trial served no other purpose than to highlight the admission of the defendant. This was clear because McGuire's testimony at the first trial actually gave defendant an alibi. The only plausible explanation for the State's introduction of McGuire's testimony was to use McGuire's prior inconsistent statement as substantive evidence against defendant. Even though the trial court instructed the jury that the prior inconsistent statement could only be used to assist in deciding the weight to be given the testimony at trial, the *Barton* court

held that did not cure the problem. *Id.* This court found that it was plain error for McGuire's testimony from the first trial to be introduced by the State at the second trial as substantive evidence. *Id.* at 960.

¶ 63    Similarly, in the present case, defendant's trial testimony largely consisted of defendant's version of events on the night of the murder and his denial of any involvement. Defendant, while subject to cross-examination, was impeached with his suppressed confessions. Defendant's testimony at the first trial, other than the impeachment evidence, did nothing to advance the State's case as it largely consisted of his denial of any involvement in the crime.

¶ 64    Based on the above analysis, defendant's statements to police, which were suppressed, were not admissible in the second trial as substantive evidence in the State's case-in-chief. After considering the evidence as a whole, we conclude that defendant's conviction was based in part on the incompetent evidence presented during the reading of defendant's testimony from the first trial in which his prior inconsistent statements, consisting of suppressed confessions, were improperly used as substantive evidence against him. Defendant's prior inconsistent statements contained suppressed confessions that remained subject to the trial court's ruling that the statements were inadmissible in the State's case-in-chief. Further, defendant's confessions obtained during his third interview were involuntary and thus should not have been used for any purpose. The State's use of the illegally obtained statements, which bear directly on a defendant's guilt or innocence, as substantive evidence of defendant's guilt in the second trial defeated the important substantive policies and functions underlying *Miranda* and the established exclusionary rules and violated defendant's fifth amendment privilege against self-incrimination.

¶ 65                                    C. Harmless Error

¶ 66    That does not end our inquiry. This court has held that the improper admission of a

defendant's statements to the police is subject to a harmless-error analysis (*People v. Mitchell*, 152

Ill. 2d 274, 328 (1992)), except in cases involving the use of physically coerced statements. *People*

*v. Wrice*, 2012 IL 111860, ¶ 71. The admission of such a confession is a "trial error," which occurs

during a case's presentation to the trier of fact and "may therefore be quantitatively assessed in the

context of other evidence presented in order to determine whether its admission is harmless beyond

a reasonable doubt." *Arizona v. Fulminante*, 499 U.S. 279, 307-08 (1991).

¶ 67    Under a harmless-error analysis, the critical question is whether it appears beyond a

reasonable doubt that the error did not contribute to the verdict. *People v. Patterson*, 217 Ill. 2d

407, 428 (2005). There are three different approaches to answering this critical question:

(1) analyzing the other evidence from the case to determine if that evidence overwhelmingly

supported the defendant's conviction, (2) focusing on whether the error contributed to the verdict,

and (3) determining whether the improperly admitted evidence was merely cumulative to the other

evidence properly admitted at trial. *Id.* In the present case, (1) the other evidence did not

overwhelmingly establish that the defendant was the shooter, (2) evidence of the suppressed

statements unquestionably contributed to the defendant's conviction, and (3) the improperly

admitted evidence was not cumulative of the other evidence. Therefore, we cannot conclude that

the improper admission of the suppressed statements as substantive evidence in the second trial

was harmless.

¶ 68    A confession is like no other evidence. In fact, a defendant's own confession is probably

the most probative and damaging evidence that can be admitted against him. *Fulminante*, 499 U.S.

at 296. This is because the defendant's admissions " 'come from the actor himself, the most

27

knowledgeable and unimpeachable source of information about his past conduct. Certainly, confessions have profound impact on the jury, so much so that we may justifiably doubt its ability to put them out of mind even if told to do so.' " *Id.* (quoting *Bruton v. United States*, 391 U.S. 123, 139-40 (1968) (White, J., dissenting)). The State presented evidence of two interviews, both of which produced confessions from defendant. In the case of defendant's coerced confession, "the risk that the confession is unreliable, coupled with the profound impact that the confession has upon the jury, requires a reviewing court to exercise extreme caution before determining that the admission of the confession at trial was harmless." *Id.*

¶ 69     There was no physical evidence tying the defendant to the murder. The State did not present any evidence of a motive for the crime other than within the defendant's suppressed statements. Aside from the State's use of the evidence of defendant's prior confessions, the evidence pointing to defendant included the fact that defendant lived in the same neighborhood as the location of the crime, a statement by defendant's friend, Melvin Hamler, and defendant's little brother, Ahmad Sanders.

¶ 70     Hamler testified that at the time of the shooting, he was walking by the area where the shooting occurred. His back was to Hubbard when he heard gunshots. He turned around for a half second and started running. Hamler was on the phone and saw defendant in a dark hoodie with the hood pulled up. During cross-examination, when asked if he recognized the person he saw as the defendant, he replied, "Yeah, I guess." He was impeached with prior testimony when he said that he could tell who it was "a little bit." When asked, "So you're saying now when you see somebody with a hoodie on you can't really tell who it is. Is that what you just said?" the witness responded, "All you can see is mouth to nose, you know what I'm sayin'? You can tell a person mouth to nose."

28

¶ 71   Defendant's younger brother, who was 15 at the time of his interview with police, testified that he implicated defendant as the shooter when interviewed by the police. At the trial, he denied making many statements to police implicating defendant in the murder. The statements that defendant's younger brother denied making were reflected on a recording of his interview that was admitted into evidence by the State for purposes of impeachment. During his testimony, where he did eventually admit making statements implicating defendant, defendant's younger brother denied the truth of the statements he gave to the officers during his interview. He did admit to saying that he saw defendant commit the murder but explained that he was lying because he was afraid of the police because they were threatening to lock him up and had told him that he would not be allowed to play sports.

¶ 72   The murder weapon was never recovered. In addition, we note that the surveillance camera footage of the shooter does not provide a picture clear enough to identify defendant as the shooter. While there is certainly some evidence tying defendant to the crime, it cannot be said that the evidence overwhelmingly supported defendant's conviction. The fact that defendant's first trial resulted in a hung jury supports this conclusion.

¶ 73   The erroneous admission of suppressed evidence in the second trial undoubtedly contributed to the verdict, and the error was not merely cumulative to the other evidence presented in the trial. Evidence that defendant admitted to confessing the crime is one of the most crucial pieces of evidence for the jury to consider in finding a defendant guilty of first degree murder. Defendant did not testify during his second trial. The State read the entire transcript of his testimony given during his first trial, including many suppressed inculpatory statements. Further, the trial court gave no limiting instruction on the purpose for which the jury could consider the

29

suppressed statements. One of the suppressed statements was: Question: "Did you tell detectives that you shot James Hubbard?" Answer: "I did tell detectives that I did that."

¶ 74 The improper admission of defendant's statements to the police was not harmless, and his conviction cannot stand. The introduction of this highly prejudicial evidence was an abuse of discretion and a trial error, and as such, his conviction for first degree murder cannot stand.

¶ 75 Although we have concluded that defendant's conviction for first degree murder cannot stand, we must determine whether to reverse it outright or remand the matter for a new trial. Under the double jeopardy clause of the United States Constitution's fifth amendment, no person may "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const., amend V. Similar provisions also exist in the Illinois Constitution (see Ill. Const. 1970, art. I, § 10) and in our statutes. See 720 ILCS 5/3-4(a) (West 2018).

> "The cornerstone of the double jeopardy clause is 'that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.' " *People v. Williams*, 188 Ill. 2d 293, 307 (1999) (quoting *Green v. United States*, 355 U.S. 184, 187-88 (1957)).

¶ 76 Although the double jeopardy clause forbids the retrial of a defendant to afford the State another opportunity to present evidence it failed to present in the first trial, it "does not preclude retrial when a conviction has been overturned because of an error in the trial proceedings." *People v. Drake*, 2019 IL 123734, ¶ 20. However, if the evidence presented during the first trial was insufficient to support a defendant's conviction, he cannot be retried. *Id.* "[F]or purposes of double

jeopardy all evidence submitted at the original trial may be considered when determining the sufficiency of the evidence." *People v. Olivera*, 164 Ill. 2d 382, 393 (1995). That is to say, even though we have determined that defendant's statements to the police and the reference to those suppressed statements during defendant's trial testimony should not have been introduced during his second trial as substantive evidence, in determining whether the double jeopardy clause forbids a retrial, we nevertheless consider those very statements. See *People v. Lopez*, 229 Ill. 2d 322, 367 (2008) (for purposes of double jeopardy, "we consider whether the evidence presented at trial, including the now-suppressed handwritten statement, was sufficient to convict"). If there was sufficient evidence presented at the first trial to support a defendant's conviction, retrial is the proper remedy. *Drake*, 2019 IL 123734, ¶ 21. In considering the sufficiency of the evidence, we must determine "whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Lopez*, 229 Ill. 2d at 367.

¶ 77    In the present case, viewing the evidence in the light most favorable to the State and including defendant's testimony from his first trial regarding his suppressed confessions, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Accordingly, the double jeopardy clause does not bar retrial, and this case must be remanded to the circuit court for retrial without the suppressed evidence. On retrial, defendant's statements during his third interview may not be used against him, as such use would violate his rights under the fifth amendment. The defendant's statements during his fourth interview, suppressed pursuant to a *Miranda* violation, are admissible only if defendant testifies inconsistently with those suppressed statements at his retrial.

31

¶ 78    Finally, the State raised the issue that the federal circuits, in reviewing admissibility of prior testimony, are split on the issue of whether the testimony should be wholesale admitted or if the court should evaluate the admissibility of each portion of a defendant's prior testimony before admitting it at a subsequent trial. We have authority to address claims that we find likely to recur on remand. *People v. Walker*, 211 Ill. 2d 317, 343 (2004). With limited exception, however, courts should refrain from deciding an issue when resolution of the issue will have no effect on the disposition of the appeal presently before the court. *Italia Foods, Inc. v. Sun Tours, Inc.*, 2011 IL 110350, ¶ 41. As we believe that the trial court's review of the transcript for evidentiary issues occurring within the transcript of defendant's prior trial testimony is necessary for the disposition of the appeal presently before this court, we will address this issue.

¶ 79    In the present case, defendant objected to the admission of his prior trial testimony in total. The State indicated it would voluntarily redact a section of the prior testimony that it believed to be prejudicial,[4] which included questioning of defendant about an outburst at his first trial. The trial court acknowledged, in ruling on the admissibility of the transcript that the prior testimony was admissible, that

> "[i]n reading this [transcript], I can see how there could be some confusion. It's somewhat—actually it's probably best that I wasn't at the last trial. Because in reading this transcript it refers to prior testimony of that day, prior testimony of other individuals. I don't know how that's all going to play out in the next trial."

This statement by the trial court tends to indicate that the trial court did notice some evidentiary issues within the transcript; however, these portions were not redacted. That said, the trial court

---

[4]As referenced above, it appears that the portion of testimony that the State agreed to redact concerning an outburst that defendant had during the first trial was actually read into evidence.

did admonish defense counsel that any further redactions from the transcript could be revisited prior to the beginning of the trial, and counsel did not raise any further objection.

¶ 80    The trial court should review prior testimony for compliance with the Illinois Rules of Evidence before allowing such testimony to be admitted in a subsequent trial. While prior testimony may be admissible under one or more rules of evidence, it does not follow that defendant's prior testimony is automatically admissible in its entirety.

¶ 81    For example, in *People v. Hoerer*, 375 Ill. App. 3d 148 (2007), the court held that the defendant received ineffective assistance of counsel where defense counsel stipulated to the admission of defendant's prior testimony that he had given in a codefendant's case, which included his admission that he engaged in plea negotiations with the State. *Id.* at 155. The portion of defendant's testimony about prior plea negotiations was inadmissible in defendant's trial pursuant to Illinois Supreme Court Rule 402(f) (eff. July 1, 1997), even if the remainder of his testimony was admissible. *Hoerer*, 375 Ill. App. 3d at 154.

¶ 82    The parties have failed to cite, and this court has failed to reveal, any Illinois case law on the issue of how to treat a defendant's testimony at a second trial where the defendant does not testify. There are a few instances where federal courts have addressed this issue, and we acknowledge those cases as persuasive authority. In the rare instances where courts have faced the question of how to treat such evidence, courts have indicated that evidentiary rules do apply. *United States v. Toombs*, 713 F.3d 1273, 1279 (10th Cir. 2013). The *Toombs* court noted several federal cases dealing with prior testimony of a defendant, quoting *Edmonds v. United States*, which held that " '[t]he fact that the defendant does not take the stand at the second trial does not prevent the use of his testimony given at the former trial, if it would otherwise be admissible.' " *Id.* (quoting *Edmonds v. United States*, 273 F.2d 108, 113 (D.C. Cir. 1959)). The *Toombs* court also cited

33

*United States v. Grunewald* and noted its holding that " 'prior trial testimony of [defendant] is properly admissible, assuming it otherwise satisfied the standards of relevancy and materiality.' " *Id*. (quoting *United States v. Grunewald*, 164 F. Supp. 644, 646 (S.D.N.Y. 1958)). *Toombs* further addressed *United States v. Hanrahan*, where the court noted that the defendant's prior trial testimony was " 'not hearsay because . . . it was an admission by a party-opponent' " in discussing whether the evidence was properly admitted. *Id.* (quoting *United States v. Hanrahan*, 508 F.3d 962, 967 n.2 (10th Cir. 2013)). Similarly, in *United States v. Bohle*, 475 F.2d 872 (2d Cir. 1973), the Second Circuit weighed the probative and prejudicial value of a defendant's prior testimony in considering admissibility. *Toombs*, 713 F.3d at 1279. The *Toombs* court cited this federal precedent and concluded that the district court should have evaluated the testimony under the Federal Rules of Evidence before admitting it into evidence. *Id.*

¶ 83    In the present case, the trial court allowed defendant's prior testimony into evidence over defendant's objection. The trial court allowed both parties the opportunity to address any evidentiary issues within the transcript. The State voluntary agreed to redact certain statements it believed were prejudicial with agreement of defense counsel. Defense counsel did not request any further redaction, though given an opportunity to do so.

¶ 84    However, the trial court did, *sua sponte*, notice an evidentiary issue. In addition to the reference to defendant's suppressed confession, the first four pages of the transcript of defendant's cross-examination involved the State repeatedly asking defendant to comment on the veracity of the testimony of the State's witnesses from the first trial. The jury in the second trial did not hear the testimony of the other witnesses from the first trial, further compounding the issue, where in the second trial the jury heard testimony of defendant, commenting on the veracity of the witnesses' testimony, which they had not heard.

¶ 85    It is highly improper for a prosecutor to ask a defendant's opinion of the veracity of other witnesses. *People v. Dowd*, 101 Ill. App. 3d 830, 844 (1981). Such questioning invades the province of the jury, for it infringes upon their function of determining the credibility of the witnesses. *Id.* The prosecution's practice of asking a criminal defendant to comment on the veracity of other witnesses who have testified against him has consistently and repeatedly been condemned by this court because such questions intrude on the jury's function of determining the credibility of witnesses and serve to demean and ridicule the defendant. *Id.*

¶ 86    While the trial court did appropriately give defendant the opportunity to object to items within the transcript that should be excluded and to provide a basis therein, where the court noted the evidentiary issues on the record, those issues should be addressed. Prior to retrial, if the State again seeks to introduce portions of defendant's testimony at his first trial, consistent with this opinion, those portions should be reviewed for their compliance with the Illinois Rules of Evidence.

¶ 87    Based on the above, it is unnecessary for this court to address defendant's argument that the trial court abused its discretion in failing to conduct a formal inquiry regarding alleged jury misconduct.

¶ 88                                  III. CONCLUSION

¶ 89    For the forgoing reasons, the judgment of the circuit court of Madison County is reversed, and this cause remanded for a new trial consistent with this opinion.

¶ 90    Reversed and remanded.

35

**No. 5-18-0339**

| | |
|---|---|
| **Cite as:** | *People v. Sanders*, 2021 IL App (5th) 180339 |
| **Decision Under Review:** | Appeal from the Circuit Court of Madison County, No. 15-CF-1880; the Hon. Neil T. Schroder, Judge, presiding. |
| **Attorneys for Appellant:** | Celestine Dotson, of St. Louis, Missouri, for appellant. |
| **Attorneys for Appellee:** | Thomas D. Gibbons, State's Attorney, of Edwardsville (Patrick Delfino and Patrick D. Daly, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |